# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT M. MILLER,** | ) |
| | ) Civil Action No. 1:22-cv-02579-CKK |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **MERRICK GARLAND, Attorney General of** | ) |
| **the United States, in his official capacity** *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
# TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

I.      The National Firearms Act.................................................................................... 2

II.     The Rule................................................................................................................ 2

III.    The Present Case .................................................................................................. 3

LEGAL STANDARD............................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.      Plaintiff Lacks Standing to Challenge the Rule. ................................................... 5

II.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Challenges to the NFA...................................................................................................................... 10

        A.      Plaintiff Lacks Standing to Challenge Aspects of the NFA Other Than the Transfer Tax. .......................................................................................... 10

        B.      Plaintiff's Challenge to the NFA's Transfer Tax Must Be Dismissed Pursuant to the Anti-Injunction Act's Jurisdiction-Stripping Provision and for Failure to Establish Waiver of Sovereign Immunity....................................... 12

CONCLUSION....................................................................................................................... 16

## INTRODUCTION

Plaintiff is a serial pro se litigant against the federal government, *see infra* n.5, who is now challenging federal firearms regulation and legislation. In a 70-page, 523-paragraph complaint, Plaintiff questions the lawfulness of a rule that the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) recently promulgated to update the definition of "firearms" subject to the Gun Control Act, including the definitions of a firearm's primary structural component, its "frame" or "receiver." Plaintiff also raises constitutional challenges to the National Firearms Act of 1934, 26 U.S.C. §§ 5801-5872 (NFA), a statute that has survived numerous constitutional challenges over its 88-year history.

None of Plaintiff's claims has merit. But the Court need not reach the merits because the Court lacks subject matter jurisdiction over any of Plaintiff's claims. As a threshold matter, Plaintiff lacks standing to challenge ATF's new rule because he does not allege that it harms him in any way. He does not allege that it prevents him from acquiring any product he wants to acquire or that he intends to engage in any conduct that would violate the Rule. His assertion that the Rule might result in some of his privately made firearms being marked with a serial number does not constitute an actual and imminent injury sufficient to demonstrate standing.

Plaintiff also seeks to enjoin application of the NFA, but he fails to establish ongoing harm from any aspect of the NFA other than its $200 tax. With respect to the $200 tax, he seeks both to enjoin its future collection and obtain refunds for taxes he has paid in the past. But his efforts to enjoin future collection of the tax is squarely barred by the Anti-Injunction Act, which removes from the jurisdiction of the federal courts any claim to enjoin the collection of federal taxes. As for his claim for money damages, Plaintiff fails to identify any applicable waiver of sovereign immunity. The Court should dismiss this action for lack of subject matter jurisdiction.

## BACKGROUND

**I.     The National Firearms Act**

The NFA regulates the possession and transfer of statutorily-defined "firearms." In the NFA, "firearms" are defined more narrowly than in the Gun Control Act of 1968, *as amended*, 18 U.S.C. § 921 *et seq.* (GCA). Under the NFA, the term "firearm" includes, among other things, a shotgun having a barrel or barrels of less than 18 inches in length; a rifle having a barrel of less than 16 inches in length; and a silencer. 26 U.S.C. § 5845(a). It also includes the statutorily-defined term "any other weapon," which means

> any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire.

*Id*. § 5845(e). Among other things, the NFA taxes the transfer of these "firearms," with a tax of $200 per firearm to be paid by the transferor, *id*. § 5811, and it prohibits transfers of these "firearms" unless certain conditions are met, including that the transferor must file an application with ATF, the transferor must pay the required tax and identify the transferee and the firearm, and ATF must approve the transfer, *id*. § 5812.

**II.    The Rule**

The GCA includes requirements for persons engaging in the business of importing, manufacturing, or dealing in "firearms." *See generally* 18 U.S.C. §§ 922-923. As noted above, Congress defined "firearms" in the GCA more broadly than in the NFA. In the GCA, Congress defined "firearm" to include "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any

2

such weapon." *Id*. § 921(a)(3). However, it did not define the terms "frame" or "receiver." *See id*. § 921. Congress has also vested in ATF the authority to prescribe regulations "necessary to carry out the provisions of" the GCA. *Id*. § 926(a). ATF published a notice of proposed rulemaking in 2021, which among other things, proposed to update its decades-old regulatory definition of "frame or receiver" that ATF had adopted in 1968. Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27,720 (May 21, 2021). ATF promulgated the final rule in April 2022. 87 Fed. Reg. 24,652 (Apr. 26, 2022) (Rule). Upon consideration of over 290,000 public comments, ATF explained its responses to the comments, its reasoned basis for the provisions of the Rule, and its rationale for updating its regulations. *Id*. at 24,652-734.

### III. The Present Case

Plaintiff filed the present action on August 26, 2022 (Doc. No. 1), and has amended his complaint twice, once on September 16, 2022 (Doc. No. 7), and once on October 28, 2022 (Doc. No. 10). Plaintiff's current complaint is more than 500 paragraphs in length and challenges the NFA and the Rule under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. (APA), the Second and Ninth Amendments to the U.S. Constitution, and "common law rights." Second Am. Compl. ¶¶ 413-506 (Doc. No. 10).

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction[.]" *Gunn v. Minton*, 568 U.S. 251, 256, (2013) (citation omitted). "A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Karam v. Garland*, No. 21-0915, 2022 WL 4598626, at *4 (D.D.C. Sept. 30, 2022). To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its

claim. *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). The factual allegations in a complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted), *aff'd*, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted). When considering whether to dismiss for lack of jurisdiction, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the [jurisdictional] question." *Competitive Enter. Inst. v. EPA*, 153 F. Supp. 3d 376, 382 (D.D.C. 2016) (citation omitted).

"Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "[A]n essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must have "standing to invoke the authority of a federal court[,]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), ensuring that the plaintiff has a "personal stake in the outcome of [a] controversy" that "justif[ies] [the] exercise of the court's remedial powers on [its] behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury in fact must be "concrete," "particularized," and "actual or imminent." *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007). "[W]here the plaintiffs

4

seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, a plaintiff must adequately plead that it is suffering an ongoing injury or faces an immediate threat of injury." *Firearms Policy Coal., Inc. v. Barr*, 419 F. Supp. 3d 118, 126 (D.D.C. 2019) (citations omitted), *aff'd sub nom. Guedes v. ATF*, 2020 WL 6580046 (D.C. Cir. Oct. 30, 2020). The "threatened injury must be *certainly impending* to constitute injury in fact;" "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted). To "shift[] injury from 'conjectural' to 'imminent,'" a party invoking jurisdiction must show that there is a "*substantial . . . probability*" of injury. *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010) (citation omitted). In addition, a "theory of standing [that] relies on a highly attenuated chain of possibilities[] does not satisfy" this requirement. *Clapper*, 568 U.S. at 410. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citation omitted).

## ARGUMENT

### I.   Plaintiff Lacks Standing to Challenge the Rule.

Plaintiff lacks standing to challenge the Rule because he fails to allege that the Rule is causing him or imminently will cause him any concrete injury. Plaintiff's allegations concerning standing only confirm that he fails to allege concrete injury. Plaintiff asserts, for example, that the Rule "restrict[s] his liberties," Second Am. Compl. ¶ 11, but he does not specify which "liberties" of his are purportedly restricted by the Rule. Nor can he. Nowhere does he allege that he is currently engaged in, or imminently plans to engage in, any action or conduct that is proscribed by the Rule. He does not, for example, allege that he is legally barred from purchasing any of the products whose definitions were amended by the Rule, or that he is engaged in the making and selling of any product the definition of which is amended by the Rule without a federal firearms

5

license.  Instead, Plaintiff alleges that he is an experienced owner of dozens of firearms, Second Am. Compl. ¶¶ 13, 30-31, 40-46, and that he owns two unfinished receivers, along with associated jigs and drill bits, and intends to convert them into functional receivers that he intends to have "cerakoted" by a federal firearms licensed dealer, *id*. ¶¶ 50-52, 60.  And although he conclusorily alleges that he is a "prospective owner of regulated firearms and firearm parts and accessories under the rule," *id.* ¶ 13, he does not allege any specific intention to acquire any firearms or firearms parts, nor does he allege that the Rule would prevent him from doing so.  "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that [the Supreme Court's] cases require." *Lujan*, 504 U.S. at 564.

The closest that Plaintiff comes to alleging that the Rule even affects his interests is his allegation that he intends to bring some of his privately made firearms (PMFs)—once constructed—to a federal firearms licensee (FFL) to be serviced or repaired, in which case the Rule would require those FFLs to mark his PMFs with a serial number *if* they held his firearms for more than one day.  *Id*. ¶¶ 54-58; *see* 87 Fed. Reg. at 24,742 (FFLs must "legibly and conspicuously identify each" PMF that is taken into the FFL's inventory within seven days of receipt or acquisition).  But Plaintiff fails to allege that the potential future application of a serial number to any of his PMFs (which do not yet exist because he has not yet converted the frame or receiver components into functional frames or receivers) is "imminent," as required by Article III. *Public Citizen*, 489 F.3d at 1292.  According to his own allegations, while Plaintiff owns receivers "he bought with the intention to make into functional" receivers, including buying associated jigs and drill bits, he has not yet done so.  Second Am. Compl. ¶¶ 50-51.  Nor does Plaintiff provide any definite timeline for when he intends to convert these components into functional receivers.

And importantly, the Rule does not prohibit Plaintiff from doing so. Plaintiff only vaguely alleges that once he does so, he will take them to a federal firearms licensed dealer to have them "cerakoted." *Id*. ¶ 52. Again, however, Plaintiff provides no information about which FFL he intends to take his eventual privately-made firearms to, or when that will take place. He only expresses a nonspecific intent to do so at some point in the future, and makes a conclusory allegation without providing any further support that the FFL's "cerakoting" process will take longer than a day and thus require the FFL to take his weapon(s) into inventory. "Such 'some day' intentions" do not give rise to Article III standing. *Lujan*, 504 U.S. at 564.

Further, Plaintiff makes no allegation that it would harm him in any way if some of his PMFs were marked with a serial numb alleging only that he "does not *wish* to have his PMFs marked with a serial number," Second Am. Compl. ¶ 56 (emphasis added). For example, nowhere does Plaintiff allege that the FFL would not return the frame or receiver in functional shape, that he could not lawfully possess the frame or receiver after its return from the gunsmith, or that there is any lawful personal use of the frame or receiver, and the weapon to which it would be attached, that he would no longer be able to engage in after its return.

However, Plaintiff's "wish" or preference is not a protected liberty interest and falls well short of the concrete injury required for Article III standing. Plaintiff does not, and cannot, allege that the application of a serial number to any weapon he owns would impact the functionality of such a weapon in any way. *Cf. United States v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010) ("Because the presence of a serial number does not impair the use or functioning of a weapon in any way, the burden on [gun owner]'s ability to defend himself is arguably *de minimis*. . . . [A] person is just as capable of defending himself with a marked firearm as with an unmarked firearm."). Nor can he allege that there is any lawful use to which a PMF without a serial number

7

could be put that the application of a serial number would prevent. Plaintiff identifies his use of weapons as "defensive firearms for his person, home, and car," Second Am. Compl. ¶ 46, but makes no allegation that a firearm with a serial number is in any way less effective or useful for defensive purposes than a PMF with no serial number. Because Plaintiff has not identified any concrete harm caused by the potential marking of his PMFs with a serial number, he lacks standing to challenge the Rule and statutes at issue in his Second Amended Complaint.

      Finally, Plaintiff fails to establish standing to challenge the Rule based on his contention that he voluntarily chose to destroy a so-called "solvent trap"—a device intended for use in fabricating firearm silencers. *See* Second Am. Compl. ¶¶ 197-201. As an initial matter, Plaintiff cannot premise standing on any alleged harm resulting from his voluntary decision to destroy his own personal property because any such alleged harm is purely self-inflicted. "[I]t is well-settled in this jurisdiction that self-inflicted injuries—injuries that are substantially caused by the plaintiff's own conduct—sever the causal nexus needed to establish standing." *Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 336 (D.D.C. 2014) (citing authority), *aff'd*, 622 F. App'x 2 (D.C. Cir. 2015).

      Moreover, Plaintiff cannot contend that his voluntary choice to destroy his solvent trap was due to fear of incurring criminal liability under the Rule because nothing in the Rule changes the legal status of solvent traps under preexisting law. The Rule does not alter the status of solvent traps under the NFA. *See* 87 Fed. Reg. at 24,699 (observing that "some individuals file an ATF Form 1 under the NFA to make solvent traps [into] silencers," which remains permissible under the Rule). Nor does the Rule change the legal status of solvent traps under the other primary federal firearms statute, the GCA. Both before and after the Rule was promulgated, the GCA considers a solvent trap to be both a "firearm silencer" and a "firearm." The GCA defines

8

"firearm" to include "any firearm muffler or firearm silencer." 18 U.S.C. § 921(a)(3)(C). In turn, the statute defines the terms "firearm muffler" or "firearm silencer" to mean "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, *and any part intended only for use in such assembly or fabrication*." *Id*. § 921(a)(25) (emphasis added). Devices labeled "solvent traps" have been indexed by a seller for the purpose of allowing the buyer to drill a hole for the passage of a projectile, in order to diminish the report of a portable firearm. 87 Fed. Reg. at 24,700. They are thus intended only for use in fabricating a firearm silencer. *Id*. Therefore, a solvent trap is a "firearm muffler" or "firearm silencer" because it is a "part intended only for use in . . . fabricati[ng]" "a firearm silencer." 18 U.S.C. § 921(a)(25). And as a "firearm silencer," it is also a "firearm." *Id*. § 921(a)(3)(C). The Rule thus does not alter the fact that a solvent trap is both a "firearm silencer" and a "firearm" under the GCA. *See* 87 Fed. Reg. at 24,700 (noting that a solvent trap is, by statutory definition, a "firearm silencer" "without regard for the [Rule's] definition of the term 'readily' or the application of the [Rule's] term 'may readily be converted'"). In short, Plaintiff's voluntary decision to destroy his solvent trap does not confer standing upon him to challenge the Rule because the Rule did not affect the preexisting legal status of such devices under federal law.

Even if Plaintiff's voluntary destruction of his solvent trap constituted injury-in-fact (and it does not), it would not justify Plaintiff's claims for prospective declaratory and injunctive relief, because it would be solely a past injury. "[I]t would not be enough for [Plaintiff] to demonstrate past harm when []he seeks only forward-looking relief; []he 'must show [she] is suffering an ongoing injury or faces an immediate threat of injury.'" *Morgan Drexen, Inc. v. Consumer Fin. Protection Bureau*, 785 F.3d 684, 689 (D.C. Cir. 2015) (citation omitted).

**II.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Challenges to the NFA.**

Plaintiff asks this Court to hold unconstitutional and enjoin the enforcement of the NFA, but he fails to show that this Court has subject matter jurisdiction over his challenges. Plaintiff does not assert that he faces harm from any aspect of the NFA other than the transfer tax. As to that tax, the Anti-Injunction Act deprives this Court of jurisdiction over Plaintiff's claim for an injunction against future collection of taxes, and Plaintiff identifies no waiver of federal sovereign immunity applicable to Plaintiff's retrospective claim for refund of taxes paid.

**A.     Plaintiff Lacks Standing to Challenge Aspects of the NFA Other Than the Transfer Tax.**

Plaintiff challenges and seek to enjoin "regulation and taxation" of silencers, short-barreled rifles, short-barreled shotguns, and any other weapons, which apparently includes the entirety of the NFA. Second Am. Compl. ¶¶ 512-13. But Plaintiff does not specify how any regulation in the NFA other than the transfer tax has caused or will cause any harm. Plaintiff alleges that he has successfully obtained forty-nine firearms subject to the NFA (twenty-four short-barreled rifles, two short-barreled shotguns, and twenty-three silencers).[1] Second Am. Compl. ¶¶ 41, 42, 45. He does not allege that the ATF has ever refused him approval to acquire a firearm under the NFA, or that the NFA prevents him from acquiring any firearm he wants to acquire.[2]

---

[1] Plaintiff does not allege that he has ever acquired, intends to acquire, or would like to acquire a weapon classified as "any other weapon" under the NFA. He therefore lacks standing to bring Count 3 of Claim Two, which challenges the NFA's regulation of "any other weapons," for that independently sufficient reason. *See* Second Am. Compl. ¶¶ 467-82.

[2] Plaintiff's allegation that but for the NFA, "Plaintiff would own more [NFA firearms] or better ones," Second Am. Compl. ¶ 48, is conclusory and does not establish standing. *See Double R Ranch Trust v. Need*, 284 F. Supp. 3d 21, 30 (D.D.C. 2018) ("Such conclusory allegations unmoored from specific, concrete facts are insufficient to establish an injury for standing purposes.") Plaintiff does not specify what additional firearms he would have acquired or plausibly allege that the NFA prevents him from acquiring those firearms.

10

To the extent that Plaintiff raises the fear of future criminal prosecution as a basis for standing, he fails to meet the requirements for a pre-enforcement challenge to a criminal statute. As the D.C. Circuit has explained, for a plaintiff to possess standing in a "preenforcement challenge[] to a criminal statute not burdening expressive rights and not in the form of appeal from an agency decision," there must be "more than a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law." *Seegars v. Gonzales*, 396 F.3d 1248, 1253 (D.C. Cir. 2005). Such a plaintiff "must show more than a 'credible threat' of prosecution: [he or she] must demonstrate an '*imminent*' threat." *Ord v. Dist. of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (quoting *Navegar, Inc. v. United States*, 103 F.3d 994, 999 (D.C. Cir. 1997)) (emphasis added). "To prove that a threat is both credible and imminent, [the D.C. Circuit] require[s] plaintiffs to demonstrate that their prosecution results from a special law enforcement priority, namely that they have been 'singled out or uniquely targeted by the . . . government for prosecution." *Id*. at 1140-41 (quoting *Parker v. Dist. of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007)).

Plaintiff falls far short of satisfying this standard. He has failed to demonstrate a concrete intention to engage in specific conduct that could potentially expose him to criminal liability under the NFA. For example, Plaintiff does not allege any concrete intention of purchasing additional short-barreled rifles, short-barreled shotguns, or silencers. In any event, Plaintiff fails to show that he has been "singled out or uniquely targeted by the . . . government for prosecution." *Id*. (citation omitted). This failure means that Plaintiff at most only faces a threat of prosecution that is "merely abstract or speculative," rather than one which is "credible and immediate." *Navegar*, 103 F.3d at 998.

Finally, Plaintiff's allegations that he suffers from tinnitus, Second Am. Compl. ¶¶ 34-35, 500, and that silencers reduce harm to hearing while using firearms, *id.* ¶ 502, do not establish standing to challenge the NFA's regulation of silencers. Plaintiff has successfully obtained twenty-three silencers, *id.* ¶ 45, and he does not allege that the NFA has caused or exacerbated his tinnitus or prevented him from using a silencer when operating firearms.

### B. Plaintiff's Challenge to the NFA's Transfer Tax Must Be Dismissed Pursuant to the Anti-Injunction Act's Jurisdiction-Stripping Provision and for Failure to Establish Waiver of Sovereign Immunity.

In Claims Two and Three, Plaintiff challenges the $200 tax imposed on firearms under the NFA under the Second Amendment and the Ninth Amendment. Second Am. Compl. ¶¶ 466, 482, 497, 506. As a remedy, he seeks both prospective and retrospective relief. Prospectively, Plaintiff seeks a declaratory judgment that the NFA's taxation of short-barreled rifles, short-barreled shotguns, any other weapons, silencers, and silencer parts violates the Second and Ninth Amendments of the Constitution (and the common law) and an injunction against enforcement of the challenged taxation provisions. *Id.* ¶¶ 509-13. Retrospectively, Plaintiff seeks "an order awarding Plaintiff a refund of all taxes he paid for the ownership of short-barreled rifles, short-barreled shotguns, and firearm silencers, currently in the amount of $9,800 plus ancillary costs of registration." *Id.* ¶ 518.[3]

These claims must be dismissed to the extent that Plaintiff seeks prospective relief from the NFA's tax requirement because the Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any

---

[3] Plaintiff alleges that he has paid taxes totaling $4,800 to own his twenty-four short-barreled rifles; $400 to own his two short-barreled shotguns; and $4,600 to own his twenty-three silencers. Second Am. Compl. ¶¶ 41-42, 45.

12

person," subject to exceptions not relevant here.  26 U.S.C. § 7421(a).  "This statute protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *Nat'l Fed. of Indep. Business v. Sebelius*, 132 S. Ct. 2566, 2582 (2012). "Because of the Anti-Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund." *Id.* (citing *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7-8 (1962)).[4]  Similarly, the Declaratory Judgment Act expressly excludes from its scope "controvers[ies] . . . with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986."  28 U.S.C. § 2201.  Thus, "the reach of" the Anti-Injunction Act and the Declaratory Judgment Act "is coterminous."  *Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir. 1979) (collecting cases).

The Anti-Injunction Act divests courts of subject matter jurisdiction over claims seeking to restrain the collection of any tax.  As the Supreme Court has held, "[t]he object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes."  *Enochs*, 370 U.S. at 5; *see also Jefferson Cnty. v. Acker*, 527 U.S. 423, 434 (1999) (characterizing the Anti-Injunction Act as "depriving courts of jurisdiction over [covered] suits"); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 749 (1974) (same).  The D.C. Circuit likewise has held that, "[u]nder the law of this Court, the Anti-Injunction Act is jurisdictional."  *Fla. Bankers Ass'n v. U.S. Dep't of Treasury*, 799 F.3d 1065, 1067 n.1 (D.C. Cir. 2015).  Accordingly, the Court should dismiss Claims Two and Three, to the extent they seek prospective relief, for lack of subject matter jurisdiction.

---

[4] Although courts have carved out two equitable exceptions to the Anti-Injunction Act, neither is plausibly alleged here.  Plaintiff does not allege either that he "has no recourse to alternative legal remedies" or that "it is clear that under no circumstances could the government prevail and equity jurisdiction otherwise exists."  *Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 8 (D.D.C. 2006) (citing *South Carolina v. Regan*, 465 U.S. 367 (1984), and *Enochs*, 370 U.S. 1).

13

Claims Two and Three also should be dismissed to the extent that Plaintiff seeks retrospective relief from the NFA's tax requirement—namely, a refund of taxes that Plaintiff has paid for ownership of short-barreled rifles, short-barreled shotguns, and firearm silencers, *see* Second Am. Compl. ¶ 518—because Plaintiff has not established the Court's subject matter jurisdiction. "Monetary claims against the government are barred by sovereign immunity unless the government has expressly waived its immunity." *Consol. Edison Co. of N.Y. v. Bodman*, 445 F.3d 438, 446 (D.C. Cir. 2006) (citing *Lane v. Peña*, 518 U.S. 187, 192 (1996)). The question whether the government has waived its sovereign immunity "goes to the subject matter jurisdiction of the court." *Delta Foods Inc. v. Republic of Ghana*, 265 F.3d 1068, 1071 (D.C. Cir. 2001). As this Court has held, even a *pro se* plaintiff bears the burden of "identify[ing] a statute expressly waiving immunity" in a lawsuit against the government. *Glogau v. United States*, No. 20-2803, 2020 WL 7122852, at *2 (D.D.C. Dec. 4, 2020) (quoting *Griffin v. United States*, 2019 WL 4644022, at *2 (D.D.C. Sept. 24, 2019)).[5]

---

[5] Moreover, although the pleadings of *pro se* litigants generally "are held to less stringent standards than those applied to formal pleadings drafted by lawyers," *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010), such deference is unwarranted where a *pro se* litigant is unlike the "typical, unsophisticated *pro se* litigant[]," even if he or she lacks formal legal training, *Mann v. Castiel*, 681 F.3d 368, 377 (D.C. Cir. 2012) (quoting *Mann v. Castiel*, 729 F. Supp. 2d 191, 199-200 (D.D.C. 2010)). Here, Plaintiff is an experienced, highly prolific *pro se* litigant, and thus the Court need not and should not accord Plaintiff the deference to which unsophisticated, inexperienced *pro se* litigants are entitled. *See, e.g.*, Petition for Writ of Mandamus, *In re Miller*, No. 22-1232 (D.C. Cir. Sept. 6, 2022); Order, *Miller v. Gruenberg*, No. 1:21-cv-03035 (D.D.C. Aug. 24, 2022), *appeal docketed*, No. 22-5256 (D.C. Cir. Sept. 29, 2022); *Miller v. McWilliams*, No. 1:20-cv-0671, 2021 WL 3192164, at *1 (E.D. Va. July 28, 2021), *appeal filed*, No. 21-2073 (4th Cir. Sept. 30, 2021); *Miller v. Merit Sys. Prot. Bd.*, 691 F. App'x 131 (4th Cir. 2017) (per curiam), *cert. denied*, 138 S. Ct. 722 (2018); *Miller v. Gruenberg*, No. 1:16-cv-856, 2017 WL 1227935, at *1 (E.D. Va. Mar. 31, 2017), *aff'd as modified*, 699 F. App'x 204 (4th Cir. 2017); *Miller v. Fed. Deposit Ins. Co.*, No. SF-1221-13-0574-W-2, 2014 WL 5768744 (M.S.P.B. Nov. 6, 2014), *aff'd sub nom. Miller v. Merit Sys. Prot. Bd.*, 626 F. App'x 261 (Fed. Cir. 2015), *cert. denied*, 577 U.S. 1236 (2016); *Miller v. Olesiuk*, No. C-13-01856 EDL, 2013 WL 4532146 (N.D. Cal. Aug. 26, 2013), *aff'd*, 615 F. App'x 887 (9th Cir. 2015), *cert. denied*, 578 U.S. 1004 (2016).

Plaintiff alleges that "[t]his Court has jurisdiction for this action under 28 U.S.C. § 1331 and 5 U.S.C. § 702." Second Am. Compl. ¶ 5. But 28 U.S.C. § 1331, the federal-question jurisdiction statute, does not itself waive sovereign immunity. *See, e.g.*, *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996); *Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012); *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008); *Holt v. Davidson*, 441 F. Supp. 2d 92, 97 (D.D.C. 2006); *Benvenuti v. Dep't of Defense*, 587 F. Supp. 348, 352 (D.D.C. 1984). And 5 U.S.C. § 702, which establishes a cause of action under the APA, expressly limits its waiver of sovereign immunity to actions "seeking relief other than money damages." 5 U.S.C. § 702. That is, "[b]ecause 'Congress has not waived the federal government's immunity from suit for claims seeking monetary damages under either the APA or the Constitution,' [a] plaintiff is limited to seeking only declaratory or injunctive relief" for alleged unconstitutional agency action under the APA. *Al Seraji v. Wolf*, No. 19-2839, 2020 WL 7629797, at *5 (D.D.C. Dec. 22, 2020) (quoting *Fletcher v. Dep't of Justice*, 17 F. Supp. 3d 89, 93 (D.D.C. 2014)), *aff'd sub nom. Al Seraji v. Mayorkas*, 2021 WL 5537735 (D.C. Cir. Nov. 16, 2021).

In short, Plaintiff has not carried his burden of establishing this Court's subject matter jurisdiction over his claims for monetary damages for taxes that he previously paid.[6]

---

[6] Plaintiff does not invoke 28 U.S.C. § 1346(a)(1) in attempting to establish the Court's subject matter jurisdiction to hear his claims for retrospective monetary tax relief. In any event, it is well established that a plaintiff must exhaust his or her administrative remedies before a court may hear a claim for recovery of "tax alleged to have been erroneously or illegally assessed or collected." 26 U.S.C. § 7422; *see also Bennett v. United States*, 462 F. Supp. 2d 35, 41 (D.D.C. 2006) ("[A] suit for refund of taxes may not be maintained in any court unless a claim for refund has been filed."). Plaintiff does not allege that he has filed a claim with the IRS for a refund of the taxes that he has paid for ownership of his short-barreled rifles, short-barreled shotguns, and twenty-three silencers.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction.

Dated:  November 14, 2022         Respectfully submitted,

                                              BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director


   /s/  Daniel Riess
DANIEL RIESS (Texas Bar No. 24037359)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
Tel: (202) 353-3098
Daniel.Riess@usdoj.gov
*Attorneys for Defendants*