UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT M. MILLER,<br>    *Plaintiff,*<br>v.<br>MERRICK B. GARLAND, et al.,<br>    *Defendants.* | Civ. Act. No: 1:22-cv-02579-CKK |

## REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Plaintiff herein replies to *Defendants' Opposition to Plaintiff's Motion for Expedited Discovery* ("*Opposition*"), ECF 16. For the reasons stated in Plaintiff's *Motion*, ECF 12, and in this *Reply*, this Court should grant expedited discovery requested.

## INTRODUCTION

Defendants' opposition to Plaintiff's motion for expedited discovery relies heavily on arguments in its motion to dismiss claiming Plaintiff has no standing to bring this claim to court. Contrary to Defendants' arguments, the requested discovery will demonstrate such standing because standing is a matter of case-specific facts. Defendants are in sole possession of facts Defendants argued Plaintiff needs to demonstrate standing. Defendants failed to demonstrate the requests are overbroad, irrelevant, unduly burdensome, or too far in advance of ordinary discovery.

This Court should grant Plaintiff's motion to give him a fair chance to rebut Defendants' arguments in their *Motion to Dismiss* ("*MTD*") either by distinguishing his case from existing precedent, or for making nonfrivolous arguments to extend, modify, or reverse existing law or to establish new law. Granting this motion will not deprive Defendants of due consideration of their arguments when the Court considers the *MTD*, Plaintiff's opposition, and Defendants' reply.

1

## ARGUMENT

**I.  The Law Permits Plaintiffs to Obtain Expedited Discovery to Prove Standing.**

"When a court rules on a Rule 12(b)(1) motion, it may `undertake an independent investigation to assure itself of its own subject matter jurisdiction,'" and it may consider "facts developed in the record beyond the complaint." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)). *Long Term Care Pharmacy Alliance v. Leavitt*, 530 F. Supp. 2d 173, 180 (D.D.C. 2008) (allowing Plaintiffs discovery to develop the record on standing).

"Where the needed showing as to standing is largely factual, the court must have the power to permit the plaintiffs to conduct a reasonable amount of discovery, if necessary, to prove to the court that they do have standing. Where there is at least a colorable basis for standing, it would be unsound to allow the witnesses to abort discovery relating to standing by arguing that the plaintiffs have no actual standing." *In re U.S. Catholic Conference*, 824 F.2d 156, 166 (2d Cir. 1987)(reversed on other grounds). *Fl. State v. Browning*, 522 F.3d 1153, 1158 (11th Cir. 2008)(allowing Plaintiff expedited discovery to establish standing). *Am. Tradition Inst. v. Epel*, Civil Action No. 11-cv-00859-WJM-BNB, at *3 (D. Colo. Mar. 19, 2013)(allowing Plaintiff expedited discovery on issues of standing).

**II.  Standing Is Case Specific**

Standing jurisprudence is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief. [quotes omitted] *National Wildlife Federation v. Hodel*, 839 F.2d 694, 703–4 (D.C. Cir. 1988); *American Wild Horse Pres. Campaign v. Salazar*, 800 F. Supp. 2d 270, 275 (D.D.C. 2011).

The standing inquiry is a case-specific one, and the burden is on "the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Thus, it is factual allegations–not legal precedents–that ultimately guide the Court's resolution of the standing question. *Friends Animals v. Jewell*, 115 F. Supp. 3d 107, 111 n.4 (D.D.C. 2015).

### III. Plaintiff May Seek to Distinguish, Reverse, Modify, Extend Law or Make New Law.

Even if Defendants were completely correct in their arguments concerning standing, and this Court ultimately grants their *MTD*, Plaintiff is entitled to make nonfrivolous arguments in his opposition to the motion to dismiss to distinguish his case from existing precedent, to reverse, modify, or extend existing law, or to make new law. F.R.C.P. 11(b)(2). Discovery aids those ends.

All of the precedential decisions on which Defendants rely for the issue of preenforcement standing[1] pre-date *District of Columbia et al. v. Heller*, 554 U.S. 570 (2008) and *New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843 (June 23, 2022). "The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen* at *5. This raises serious questions about whether this Circuit's precedents regarding preenforcement challenges of gun regulations will survive scrutiny in light of new law. Gun owners and prospective gun owners face extraordinary risks from violating such laws, including felony conviction, lengthy imprisonment, heavy fines,

---

[1] *Parker v. D.C.*, 478 F.3d 370 (D.C. Cir. 2007); *Seegars v. Gonzales*, 396 F.3d 1248, 1253 (D.C. Cir. 2005).

3

forfeiture of guns,[2] and forfeiture of Second Amendment rights. "We normally do not require plaintiffs to 'bet the farm ... by taking the violative action' before 'testing the validity of the law,' *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007); accord, *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Free Enterprise Fund v. Public Company*, 561 U.S. 477, 490 (2010).

Discovery will show Plaintiff faces a credible threat of immediate enforcement of the NFA and GCA for all of the conduct he challenges in this suit.

### IV. Plaintiff Made No Motion for Leave to Amend

As a threshold matter, Defendants misconstrue Plaintiff's argument concerning "Further Amendment of or Supplement to the Complaint." ECF 16 at 19, re: ECF 12 at 8. This section was *not* a motion for leave to amend, and this Court should not construe it as such. Plaintiff will make such a motion when the time is ripe after this Court decides on Defendants' *MTD*.

This section of Plaintiff's motion argued that Defendants' responses to Plaintiff's proffered discovery requests *could be used* to amend or supplement his *SAC* to address any pleading deficiencies as to jurisdiction. "If the difficulty is no more serious than inadequate jurisdictional allegations, the defect may be curable simply by amendment. See 28 U.S.C. § 1653 (1976); Fed.R.Civ.P. 15(a); *Kaufman v. Western Union Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955), cert. denied, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); *Jones v. Freeman*, 400 F.2d 383, 387 (8th Cir. 1968). *Gordon v. Nat'l Youth Work All.*, 675 F.2d 356, 363 n.12 (D.C. Cir. 1982).

---

[2] In Plaintiff's case, more than $250,000 worth of firearms and accessories.

That is, Plaintiff was merely describing the utility and relevance of his discovery requests to facts supporting jurisdiction that may be necessary if this Court dismisses the claims with leave to amend.

## V. Legal Standard for Considering Expedited Discovery.

"Although the Federal Rules of Civil Procedure do not provide specific standards for evaluating expedited discovery motions, the Rules do provide the court with the authority to direct expedited discovery in limited circumstances." *Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 4, 6 (D.D.C. 2006). Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.*

### A. Preliminary Injunction.

Plaintiff admits there is no preliminary injunction pending, nor does he intend to move for one.

### B. Breadth of the Discovery Requests.

As purported evidence of overbreadth, Defendants point to Interrogatories 2—6. *Id*. at 15. Interrogatory 2 simply asks Defendants to explain how Plaintiff could obtain a refund of his NFA taxes paid without surrendering those registered weapons. While Defendants appear to argue the request is broad because of the "all circumstances" language, the fact is that there are *no circumstances* under which Defendants would provide a tax refund – a very narrow response either reinforcing its response to Request for Admission 4 or, if they deny RFA 4, under what

5

circumstances Plaintiff could obtain a refund. This is directly relevant to Defendants' claim Plaintiff failed to exhaust administrative remedies and relevant to the futility of a refund request.

Similarly, Interrogatory 3 only appears broad because of the use of the word "all" when asking Defendants to demonstrate they have prosecuted people for possessing or making solvent traps. Plaintiff would gladly narrow this request to the past three years. This interrogatory is narrowly tailored to Defendants' assertion solvent traps violate the law and to Plaintiff's pleadings he was forced to destroy his solvent trap for fear of prosecution. It is specific reinforcement for Defendants' responses to RFA 5 and 6 seeking admission Defendants would have enforced the NFA (and GCA) if Plaintiff had not destroyed his solvent trap.

Interrogatory 4 seeks legal authorities Defendants alluded to but did not cite in their motion to dismiss. ECF 11-1 at 1. Defendants repeatedly make statements to this Court of a dispositive nature that are more of a suggestion than a legal argument. This deprives Plaintiff of a full and fair opportunity to rebut the Agency's arguments. Defendants do not explain why this interrogatory is overbroad; clearly, Defendants have a limited number of cases in mind.

Defendants made no attempt to argue *why* Interrogatory 5 is overbroad, for a question that merely asks the Agency to state the reasons it denied applications to make silencers from solvent traps other than purely administrative reasons (incomplete applications, state prohibitions, missing fingerprints, etc.) This interrogatory pertains directly to Defendants' contradictory claims it is permissible to make a silencer from a solvent trap, but it is unlawful to possess a solvent trap.

Defendants also do not explain why Interrogatory 6 is overbroad. The question merely asks Defendants *how* one would legally make a suppressor from a solvent trap if possessing the solvent trap is illegal. The purpose of this interrogatory is to rebut Agency's arguments in its *MTD*.

Next, Defendants make conclusory arguments Plaintiff's requests for 15 years of budget information on tax revenues and expenses to collect those revenues is overbroad, apparently only because of the number of years. *Opposition* at 16—17. Defendants failed to provide any affidavits attesting to this "massive burden." Arguments of lawyers are not evidence.

Federal agencies presumably have their annual budgets readily at hand. The Agency specifically reports its NFA tax collections by year. Plaintiff thoroughly explained the need for a minimum of fifteen years: the soaring number of National Firearms Act applications in recent years would, holding staffing and budgets constant, artificially increase the net revenue per application. The agency would benefit from temporary economies of scale, i.e., falling average cost of processing applications. In the longer term, the agency would have to hire more staff to meet this rising demand. Costs of processing these soaring applications will be hidden within lengthening applicant waiting times, which Plaintiff pleaded was exceptionally lengthy. *Complaint* ¶ 47. These discovery requests demonstrate that the NFA tax is not a true source of government revenue but an end-run around Second Amendment protections by making NFA regulated firearms prohibitively expensive.

In summary, Defendants' *Opposition* only complained vociferously that discovery was overbroad, which falls well short of its burden to prove overbreadth. This Court must also consider that Plaintiff needs this information to rebut Defendants' arguments vis a vis standing, he has no other means of obtaining this information, Defendants have resources far above those of Plaintiff, the issues of unconstitutional taxes and a rule violating the APA are very important, and the benefits of discovery outweigh its costs. F.R.C.P. 26(b)(1).

### C. Purpose of Discovery.

The purpose of Plaintiff's discovery is to directly address arguments Defendants made in their *Motion to Dismiss* regarding Plaintiff's standing to bring suit to challenge the Agency's Rule and the National Firearms Act. Even with facial challenges to the sufficiency of the pleadings with respect to elements of standing (in this case *only* injury-in-fact), Plaintiff may seek discovery to gather facts supporting injury-in-fact relying solely on information in Defendants' possession.

Defendants play coy about the severe penalties Plaintiff would face for violating the NFA or GCA. Discovery will force Defendants to admit Plaintiff faces enormous risks if he violates those laws, providing him standing for a preenforcement challenge.

Defendants know requesting an NFA tax refund is futile, yet they continue to challenge Plaintiff's standing to seek a tax refund and this Court's jurisdiction to grant a refund. Defendants discovery responses expose the NFA for what it is: a prohibitive tax used to get around Second Amendment protections.

### D. Burden of Discovery.

The person or entity "resisting discovery" has the "burden . . . to show that the documents requested are . . . unduly burdensome[.]" *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010); see also *Buzzfeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Vague and conclusory assertions are not sufficient; rather, a showing of undue burden "must be specific" and concrete. See, e.g., *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 207 (D.D.C. 2000). Assertions of an undue burden without "specific estimates of staff hours needed to comply" should be "categorically rejected." *Association of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454, 458 n.2 (D.D.C. 1993). *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053-RCL, at *4 (D.D.C. Nov. 8, 2019).

Defendants provided no affidavits to this Court attesting to their burden to provide any of the requested discovery items. Defendants made mere conclusory claims of burden that this Court must categorically reject. Defendants refer to the number of discovery requests, but did not even attempt to explain why this number was unduly burdensome. More than 62% (18 of 29) of the discovery requests are Requests for Admissions requiring very little time or expense.

In considering an objection to discovery requests on the basis of burden, federal rules require the Court to consider (1) the needs of the case, (2) the importance of the issues at stake in the action (3) the amount in controversy, (4) the parties' relative access to relevant information, (5) the parties' resources, (6) the importance of the discovery in resolving the issues, and (7) whether the burden or expense of the proposed discovery outweighs its likely benefit. F.R.C.P. 26(b)(1). Defendants did not make any arguments concerning the other factors this Court considers, thus they have failed to carry their burden.

As stated above in the Overbreadth section, Defendants' responses to discovery will be extremely limited given that the requests paint Defendants in a corner by having them admit to elements of injury-in-fact, the futility of tax refunds, the inability to submit NFA applications without tax payment, the impossibility of legally making a silencer from a solvent trap,

### E. Time in Advance of Regular Discovery.

Plaintiff's opposition to Defendants' *MTD* is due on January 12, 2023 and Defendants' reply is due on January 26, 2023. Assuming Plaintiff's claims survive the *MTD*, discovery will likely commence in mid- to late- February, 2023 – just two months from the date of this Reply.

Defendants cited inapposite authorities relating to failure to state a claim where a plaintiff's cause of action might be unviable. ECF 16 at 18. Defendants try to shoehorn this into their

Rule 12(b)(1) motion, citing *NBC-USA Hous., Inc. v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011) and *Attkisson v. Holder*, 113 F. Supp. 3d 156, 165 (D.D.C. 2015).

In *NBC-USA*, the court noted that, "This Circuit's standard for permitting jurisdictional discovery is quite liberal." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003)." *NBC-USA* at 294-95. A plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has jurisdiction. *Caribbean Broad. Sys., Ltd. v. Cable Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); NBC-USA at 295. In the instant case, Plaintiff satisfied his duty to make a detailed showing of what discovery he wished to conduct and what results he thinks discovery would produce. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003); *NBC-USA* at 295. Plaintiff's discovery strikes directly at the heart of Defendants' jurisdictional attacks.

Unlike the instant case, the plaintiff in *Attkisson* sought "extensive and expensive discovery." As shown above, Defendants failed to demonstrate Plaintiff's requests were either extensive or expensive. The *Attkisson* court also denied the motion because there was a dispute over whether plaintiff properly served the defendants, an issue not present in this case.

## VI. Amendment of Requests

If this Court grants Plaintiff's motion for expedited discovery, he requests leave to modify the requests referring to the National Firearms Act (NFA) to also include the Gun Control Act (GCA), both of which are pertinent to standing. Plaintiff does not anticipate these changes to expand Agency's burden in responding to discovery.

## VII. Conclusion

For the reasons stated above, this Court should grant Plaintiff's motion for expedited discovery.

December 22, 2022                                     Respectfully submitted.

                                                                                                                _____
                                                                                                                Robert M. Miller, *pro se*
                                                                                                                4094 Majestic Ln, #278
                                                                                                                Fairfax, VA 22033
                                                                                                                (415) 596-2444
                                                                                                                RobMiller44@Hotmail.com