## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT M. MILLER,

*Plaintiff,*

v.

MERRICK B. GARLAND, U.S. Attorney General,
U.S. DEPARTMENT OF JUSTICE; STEVEN
DETTELBACH, Director, Bureau of Alcohol
Tobacco, Firearms, and Explosives; BUREAU
OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES,

*Defendants.*

Civ. Act. No: 1:22-cv-02579-CKK

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

ROBERT M. MILLER, PH.D.
4094 Majestic Lane, #278
Fairfax, VA  22033
(415) 596-2444
RobMiller44@hotmail.com

*Pro se*

June 13, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION .......................................................................................................................1

ARGUMENT ..............................................................................................................................2

  I.   LEGAL STANDARDS ..................................................................................................2

  II.  SUPPLEMENTAL FACTS ............................................................................................3

  III. PLAINTIFF'S CHALLENGES TO AGENCY RULE .........................................................4

    A.  DEFENDANTS' ARGUMENTS REGARDING THE RULE ................................................4

    B.  PLAINTIFF HAS STANDING TO CHALLENGE THE RECEIVER RULE ........................6

      1.  Injury in Fact ...................................................................................................7

        a.  Injury from the Marking Requirements ........................................................7

        b.  Injury from Solvent Trap and Other Silencer Regulations in the Rule..........8

      2.  Causal Relationship ..........................................................................................12

      3.  Redressability ..................................................................................................13

      4.  Prudential Standing ..........................................................................................13

  IV. PLAINTIFF'S NFA/GCA CLAIMS...............................................................................14

    A.  DEFENDANTS' ARGUMENTS REGARDING THE NFA/GCA. ...................................14

    B.  PLAINTIFF HAS STANDING FOR NFA/GCA CLAIMS .........................................15

      1.  Injury in Fact ...................................................................................................15

      2.  Causal Relationship ..........................................................................................18

      3.  Redressability ..................................................................................................18

      4.  Prudential Standing ..........................................................................................19

  V.  PLAINTIFF'S NFA TAX REFUND CLAIM....................................................................19

A.   PLAINTIFF INVOKED THIS COURT'S JURISDICTION FOR A TAX REFUND. ............................19

B.   EXHAUSTION OF ADMINISTRATIVE REMEDIES ....................................................................20

C.   PLAINTIFF'S CLAIM SATISFIES AN EXCEPTION TO THE ANTI-INJUNCTION ACT...................21

D.   SOVEREIGN IMMUNITY ......................................................................................................22

VI.  CONCLUSION.............................................................................................................................25

VII. VERIFICATION...........................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ameren Servs. Co. v. Fed. Energy Regulatory Comm'n*, 893 F.3d 786 (D.C. Cir. 2018) ..............6

*America's Comm'y Bankers v. FDIC*, 200 F.3d 822 (D.C. Cir. 2000)..........................................12

*Animal Legal Defense Fund v. Glickman*, 154 F.3d 426 (D.C. Cir. 1998) ...................................12

*Ashcroft v. Iqbal*, 556 U.S. 662, 664, 679 (2009)...........................................................................3

*Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74 (D.D.C. 2006) ........................................19

*Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146 (D.C. Cir. 2015) ..........................................3

*Brown v. Whole Foods*, 789 F.3d 146 (D.C.Cir.2015) .....................................................................3

*Caetano v. Massachusetts*, 577 U.S. 411 (2016)...........................................................................15

*Chamber of Commerce v. Fed. Election Comm'n*, 69 F.3d 600 (D.C. Cir. 1995)...........................7

*Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)..............................................11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......................................................................8

*Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388 (1987).........................................................................13

*Council of Parent Attorneys & Advocates, Inc. v. Devos*, 365 F. Supp. 3d 28 (D.D.C. 2019) .....12

*Data Processing Service v. Camp*, 397 U.S. 150 (1970) ...............................................................13

*Dep't of Commerce v. New York*, ⸺ U.S. ⸺, 139 S. Ct. 2551 (2019)....................................13

*District of Columbia et al. v. Heller*, 554 U.S. 570 (2008) ..........................................................15

*Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325 (D.D.C. 2014) ...........................11

*ESI/Employee Sols. v. City of Dallas*, 450 F. Supp. 3d 700 (E.D. Tex. 2020) ...............................6

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C.Cir.1996).......................................................11

*Fogle v. Walton-Pratt*, 318 F. Supp. 3d 114 (D.D.C. 2018) ..........................................................2

*Fosnight v. Jones*, 41 F.4th 916 (7th Cir. July 27, 2022) ...............................................................9

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ...................................11

*Growth Energy v. Envtl. Prot. Agency*, 5 F.4th 1 (D.C. Cir. 2021)...............................................13

*Haines v. Kerner*, 404 U.S. 519 (1972) ......................................................................................19

*Halcomb v. Office of Senate Sergeant-At-Arms*, 563 F. Supp. 2d 228 (D.D.C. 2008)..................19

*Horvath v. Dodaro*, 160 F. Supp. 3d 32 (D.D.C. 2015) ...............................................................3

*Jerome Stevens Pharm., Inc.*, 402 F.3d 1249 (D.C. Cir. 2005).....................................................3

*Krieger v. Fadely*, 211 F.3d 134 (D.C. Cir. 2000) .......................................................................19

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...........................................................................6

*Macintosh v. Building Owners Managers Ass'n*, 355 F. Supp. 2d 223 (D.D.C. 2005) .................19

*Magowan v. Lowery*, 166 F. Supp. 3d 39 (D.D.C. 2016)..............................................................3

*Mann v. Castiel*, 681 F.3d 368 (D.C. Cir. 2012) .........................................................................20

*Marbury v. Madison*, 5 U.S. 137 (1803) .....................................................................................23

*Martens v. U.S.*, Civil Action No. 05-1805 (D.D.C. July 6, 2007) ...............................................20

*Mass. Coal. for Imm. Ref. v. U.S. DHS*, 1:20-cv-3438 (D.D.C. Aug. 11, 2022)............................2

*Mass. CU Share Ins. v. NCUA*, 693 F. Supp. 1225, 1228 (D.D.C. 1988) .....................................6

*Match-E-Be-Nash-She-Wish Band v. Patchak* ("*Patchak*"), 567 U.S. 209 (2012) .....................13

*Minneapolis St. Louis Ry. Co. v. Gardner*, 177 U.S. 332 (1900) .................................................6

*Murthy v. Vilsack*, 609 F.3d 460 (D.C. Cir. 2010) ......................................................................21

*Nat'l Ass'n of Home Builders v. Envtl. Prot. Agency*, 786 F.3d 34 (D.C. Cir. 2015 ....................7

*Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) ...................................................15

*New York State Rifle and Pistol Association v. Bruen*, __ U.S. __, Case No. 20-843, slip op. (June 23, 2022).................................................................................................................2, 8

*November 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (D.C. Cir. 2008) ................................................19

*Ord v. Dist. of Columbia*, 587 F.3d 1136 (D.C. Cir. 2009).............................................................15

*Pai v. United States Citizenship & Immigration Servs.*, 810 F. Supp. 2d 102 (D.D.C. 2011)......13

*Parker v. Dist. of Columbia*, 478 F.3d 370 (D.C. Cir. 2007) ..........................................................15

*Perfvwaybelayouix v. Graham-Drake*, Civil Action 22-1019 (CKK) (D.D.C. Dec. 1, 2022) ........3

*Perisic v. Jim Yong Kim*, No. 18-cv-2038 (D.D.C. Oct. 24, 2019) ...................................................3

*Roberson v. Fed. Bureau of Investigation*, Civil Action 1:20-cv-02431 (D.D.C. Oct. 10, 2022).21

*Rossville Convenience & Gas, Inc. v. Garland*, Civil Action 20-2218 (D.D.C. Dec. 10, 2021) ..13

*Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005) ....................................................................15

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 104 (1996) ..........................................................23

*Sherley v. Sebelius*, 610 F.3d 69 (D.C. Cir. 2010) ...........................................................................8

*South Carolina v. Regan*, 465 U.S. 367 (1984)...............................................................................21

*Spencer v. Brady*, 700 F. Supp. 601 (D.D.C. 1988) ........................................................................21

*State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48 (D.C. Cir. 2015)............................................11

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)...........................................................12

U.S. Const. amend. IX .......................................................................................................................1

*United States v. Lee*, 106 U.S. 196 (1882) ......................................................................................22

*United States v. Ridenour*, No. 22-20031 (E.D. Mich. May 9, 2022) ..............................................9

*United States v. Sherwood*, No. CR20-0155-JCC (W.D. Wash. Oct. 20, 2021) ..............................9

*US Dominion, Inc. v. MyPillow, Inc.*, 1:21-cv-0445 (D.D.C. May 19, 2022).................................3

*Vall. Forge Christ'n Coll. v. Am. United for Sep. of Church & State, Inc.*, 454 U.S. 464 (1982) 13

*Wellness Pharmacy, Inc. v. Becerra*, 20-cv-3082  (D.D.C. Sep. 21, 2021) ..................................11

**STATUTES**

18 U.S.C. §3571 ........................................................................................................................17, 22

18 U.S.C. §921 ....................................................................................................................10

18 U.S.C. §922 .............................................................................................................17, 22

18 U.S.C. §924 .............................................................................................................17, 22

26 U.S.C. §5871 ...........................................................................................................17, 22

26 U.S.C. §5872 ...........................................................................................................17, 22

26 U.S.C. §7421 ..........................................................................................................passim

26 U.S.C. §7422 ...................................................................................................................20

28 U.S.C. §1746 ...................................................................................................................26

5 U.S.C. §702 ...........................................................................................................1, 3, 9

5 U.S.C. §706 ..................................................................................................................2, 12

Administrative Procedure Act, Pub.L. 79–404, 60 Stat. 237 (1946)...............................6, 9, 13, 22

Gun Control Act of 1968, Pub. L. 90-618 ......................................................................passim

National Firearms Act of 1934, Pub. L. 73-474 .............................................................passim

## REGULATIONS

27 C.F.R. §478.92..................................................................................................................16

27 C.F.R. §479.102................................................................................................................16

Definition of 'Frame or Receiver' and Identification of Firearms, RIN 1140-AA54 (Apr. 26, 2022)

...............................................................................................................................passim

## RULES

Fed.R.Civ.P. 11 .....................................................................................................................15

Fed.R.Civ.P. 12 ...........................................................................................................2, 3, 20

Fed.R.Civ.P. 8 .......................................................................................................................19

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT M. MILLER,

               *Plaintiff,*

     v.

MERRICK B. GARLAND, U.S. Attorney General,
U.S. DEPARTMENT OF JUSTICE; STEVEN
DETTELBACH, Director, Bureau of Alcohol
Tobacco, Firearms, and Explosives; BUREAU
OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES,

               *Defendants.*

Civ. Act. No: 1:22-cv-02579-CKK

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

     **COMES NOW** Plaintiff, *pro se*, opposing Defendants' *Motion to Dismiss* ("*MTD*"),
ECF 11. For the reasons below, this Court should deny Defendants' motion in its entirety.

## INTRODUCTION

     This case consists of two parts with three claims. The first part challenges Defendants'
*Definition of 'Frame or Receiver' and Identification of Firearms*, RIN 1140-AA54 ("Rule") under
the Administrative Procedure Act. 5 U.S.C. §702. Plaintiff also challenges ATF's determination,
discussed publicly for the first time in that Rule, that unfinished silencer components often called
"solvent traps" are silencer parts regulated by the National Firearms Act of 1934, Pub. L. 73-474
("NFA") and Gun Control Act of 1968, Pub. L. 90-618 ("GCA"). The second claim challenges the
constitutionality of portions of the NFA and GCA under the Second Amendment. The third claim
challenges the NFA and GCA regulation of silencers under the Ninth Amendment and common
law rights to protect one's hearing. There is also an unstated claim, liberally construed from the

1

pleadings of a *pro se* litigant, for a tax refund on the $9,400 Plaintiff paid for possession of his NFA firearms.[1]

As pleaded in his Second Amended Complaint ("*SAC*"), ECF 10, Defendants' Rule must be set aside under 5 U.S.C. §706 for gross deficiencies in the rulemaking process. Plaintiff has also stated a claim that the NFA and the GCA are unconstitutional because they regulate and tax a fundamental right guaranteed by the Second Amendment to the U.S. Constitution to such an extent the right is substantially infringed. Plaintiff pleaded facts demonstrating short-barreled rifles, short-barreled shotguns, any other weapons, and firearm silencers are all "bearable arms" presumptively covered by the Second Amendment. *New York State Rifle and Pistol Association v. Bruen*, __ U.S. __, Case No. 20-843, slip op. (June 23, 2022).

Since Defendants made no Rule 12(b)(6) motion in their *MTD*, it is only necessary in this memorandum of law for Plaintiff to rebut Defendants' arguments vis à vis jurisdiction.

## ARGUMENT

### I. LEGAL STANDARDS

Plaintiff must establish standing at each phase of litigation, but the burden to prove standing at the motion to dismiss stage is lighter than at summary judgment. *Mass. Coal. for Immigration Reform v. U.S. Dep't of Homeland Sec.*, 1:20-cv-3438 (TNM), at *6 (D.D.C. Aug. 11, 2022).

*Pro se* pleadings are to be liberally construed and held to less stringent standards. *Fogle v. Walton-Pratt*, 318 F. Supp. 3d 114, 118 (D.D.C. 2018). Courts treat the complaint's factual allegations as true and afford plaintiffs the benefit of all inferences that can be derived from the

---

[1] The *Complaint* pleaded $9,800, but afterward Plaintiff discovered he already received tax refunds for two NFA stamps for which he never built the NFA firearm.

facts alleged." *Dominion, Inc. v. MyPillow, Inc.*, 1:21-cv-0445 (CJN) (D.D.C. May 19, 2022).

While the Court need not accept as true legal conclusions couched as factual allegations, the Court does not necessarily discard them. Legal conclusions may frame the complaint when they are supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 679 (2009).

Any person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. 5 U.S.C. §702.

## II.  SUPPLEMENTAL FACTS

Plaintiff includes with this *Opposition* sworn declarations from Luis A. Rose, Exhibit 1, the owner of Sterling Arsenal in Sterling, Virginia and Plaintiff, Exhibit 2 pleading additional facts, incorporated herein by reference, addressing purported deficiencies in Plaintiff's *Second Amended Complaint* ("*SAC*").

Courts in this Circuit must consider facts alleged in all of a *pro se* plaintiff's pleadings, including an opposition to a motion to dismiss, in resolving a motion to dismiss. *Brown v. Whole Foods*, 789 F.3d 146, 152 (D.C.Cir.2015); *Horvath v. Dodaro*, 160 F. Supp. 3d 32, 37 (D.D.C. 2015). "[T]he pro se litigant may, in effect, supplement his complaint with the allegations included in his opposition." *Magowan v. Lowery*, 166 F. Supp. 3d 39, 58 (D.D.C. 2016); *Perisic v. Jim Yong Kim*, No. 18-cv-2038 (EGS), at *21 (D.D.C. Oct. 24, 2019).

Courts "may consider materials outside the pleadings in deciding … a motion to dismiss" under Rule 12(b)(1). *Jerome Stevens Pharm., Inc.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). "[C]ourts may consider documents filed after a complaint when evaluating a motion to dismiss." *Perfvwaybelayouix v. Graham-Drake*, Civil Action 22-1019 (CKK), at *7 (D.D.C. Dec. 1, 2022).

### III.   PLAINTIFF'S CHALLENGES TO AGENCY RULE

#### A.   Defendants' Arguments Regarding the Rule

Defendants challenge Plaintiff's standing to pursue his claims arguing Plaintiff failed to allege imminent, concrete, and particularized injury. *MTD* at 5. They argue Plaintiff does not specify which liberties are infringed, nor does he allege he is engaged in or imminently plans to engage in action proscribed by the Rule. *Id.* Defendants claim Plaintiff made "conclusory" allegations he is a prospective owner of regulated firearms but does not allege specific intention to obtain them. *Id.* at 6. Defendants correctly state Plaintiff alleged he intends to bring his PMFs to an FFL for repair, and that whether the gun will be marked is conditional upon the time it takes to perform the repairs. *Id.*

Defendants falsely claim Plaintiff's PMFs do not exist, saying, "According to his own allegations, while Plaintiff owns receivers 'he bought with the intention to make into functional' receivers, including buying associated jigs and drill bits, he has not yet done so." *MTD* at 6. Plaintiff clearly pleaded that he completed at least one 80% receiver that needs gunsmith repairs. *SAC* ¶ 57. See also *Rose Decl.* ¶ 23; *Miller Decl.* ¶ 19. Even so, Defendants' Rule explicitly defines the unmarked 80% receivers and frame as regulated firearms, regardless of their state of completion. Thus, their claim Plaintiff's PMFs "do not exist" is disingenuous.

Plaintiff expressly pleaded "Plaintiff will take these privately made firearms ("PMFs") to a federal firearms licensed dealer ("FFL") to have them 'cerakoted.' The cerakoting process will take more than one day." *SAC* ¶ 52. These are not "conclusory" allegations or "some day" intentions as Defendants claim. *MTD* at 7. They are factual allegations based upon Plaintiff's stated intentions and knowledge of the process from prior experience. Plaintiff bolsters these allegations with detailed statements from himself and the owner of Sterling Arsenal that he intends to repair

and cerakote the receiver and frame, and that it will take much longer than one day, on the order of five weeks or more. See *Miller Decl.* ¶¶ 22—28; *Rose Decl.* ¶¶ 11—25. Nevertheless, Mr. Rose declares that ATF requires him to serialize unmarked receivers immediately on intake. *Id.* Plaintiff's declaration explains he had previously obtained gunsmithing, machining, and cerakoting services from Sterling Arsenal, and all of them took considerably longer than one day to perform. *Miller Decl.* ¶ 11.

Plaintiff's brief hesitation to have these firearms completed, repaired, and cerakoted is predicated only upon the irreparable damages of the Rule should he bring them in now. *Miller Decl.* ¶ 20, 22. Those damages consist of paying $65—$85 for marking each firearm and having his unmarked firearms marked and logged into a federally-regulated system. *Rose Decl.* ¶ 26; *Miller Decl.* ¶ 13, 27, 29. Defendants cannot deny Plaintiff is damaged by the costs of marking – costs that Defendants were required to include in their Rule, but did not. *SAC* ¶¶ 286, 288, 302, 312, 316. Plaintiff will bring these firearms in for repair and cerakoting as soon as the Rule is set aside. *Miller Decl.* ¶ 28.

Defendants blithely mock these damages by emphasizing Plaintiff "does not *wish* to have his PMFs marked with a serial number." [emphasis in original] *MTD* at 7. Defendants claim Plaintiff's "wish" is not a protected liberty interest. *Id.* Next, Defendants make irrelevant arguments citing inapposite authorities that a serial number does not impair a weapon's function or Plaintiff's ability to defend himself. *Id.* But those arguments are straw men. Plaintiff's standing is not bound to damages Defendants believe Plaintiff should have pleaded, but to damages Plaintiff has pleaded. Defendants claim any harm would be *de minimis*. *Id.* There is no *de minimis* standard for injury in fact; a minor but identifiable harm will suffice. *Massachusetts Credit Union Share*

*Insurance v. National Credit Union Administration*, 693 F. Supp. 1225, 1228 (D.D.C. 1988). Nevertheless, as described below, Plaintiff's injuries are far from *de minimis*.

Plaintiff indeed has both protected property and liberty interests in keeping his PMFs unmarked. Defendants' attitude is one where citizens of the United States must live by the leave of their government rather than possessing the liberty to do anything that is not proscribed by law. *Minneapolis St. Louis Ry. Co. v. Gardner*, 177 U.S. 332, 343 (1900) ("[A natural person] can do anything not forbidden by law.") Defendants do not get to pass judgment on Plaintiff's lawful motive to possess unserialized weapons the government does not have a record of.

**B.  Plaintiff Has Standing to Challenge the Receiver Rule**

The legal standards for proving standing in APA cases are more lenient than those for pre-enforcement challenges to statutes. To prove standing in an APA case, Plaintiff must demonstrate Article III standing and prudential standing. Standing requires a showing of (A) injury in fact, (B) causality, (C) redressability, (D) that Plaintiff's interests arguably lie within the zone of interest protected or regulated by statute, in this case the NFA and GCA. "When a plaintiff is the object of the regulation he challenges, establishing standing is generally not difficult. *ESI/Employee Sols. v. City of Dallas*, 450 F. Supp. 3d 700, 717 (E.D. Tex. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), 112 S.Ct. 2130.) It is indisputable Plaintiff was the object of the Rule, since it was directly intended to affect his unmarked privately made firearms ("PMF"), including rifles, pistols, and silencers. "[A] regulated party generally has standing to challenge an agency action regulating its behavior…" *Ameren Servs. Co. v. Fed. Energy Regulatory Comm'n*, 893 F.3d 786, 792 (D.C. Cir. 2018).

"[T]he law is rather clear; any party covered by an agency's regulatory action has standing to challenge a rule when it issues—it certainly need not wait until a government agency seeks to

enforce a rule. See *Chamber of Commerce v. Fed. Election Comm'n*, 69 F.3d 600, 604 (D.C. Cir. 1995)." *Nat'l Ass'n of Home Builders v. Envtl. Prot. Agency*, 786 F.3d 34, 44 (D.C. Cir. 2015). "It is only necessary for a potential litigant to show that it is part of the regulated class, and its behavior is likely affected by the government's action." *Id.*

1. Injury in Fact

    a. Injury from the Marking Requirements

Plaintiff suffers imminent, concrete, and particularized injury because the Rule forces federal firearms licensed ("FFL") entities to mark any unmarked receiver or frame Plaintiff brings in for gunsmithing repairs, machining, or Cerakote coating. Plaintiff pleaded he bought several 80% AR-15 receivers and an 80% Glock-style frame with the intention of making functional firearms that Plaintiff did not want to be marked and logged into any system accessible to the U.S. government. *SAC*, ¶¶ 50—60. Plaintiff pleaded he completed one 80% receiver, but it remains unfunctional, and it has no protective finish (i.e., raw aluminum). *SAC*, ¶¶ 50, 52, 57—59. A local gun shop that does engraving of firearm markings will charge Plaintiff $65—$85 for each gun required to be serialized. See *Rose Decl.*, ¶ 26.

Plaintiff's injuries are not merely speculative because he must, and in any event will, bring his firearms to his local gun shop for gunsmith repairs and Cerakote coating. *SAC* ¶¶ 52, 57. These services are certain to take longer than one day, and in any event his local gun shop must engrave a serial number on all unmarked receivers and frames at intake. See *Rose Decl.* ¶¶ 10—25. If Plaintiff were to leave his bare aluminum receiver uncoated to avoid the injuries of the Rule, he would suffer injury of increased wear and tear on his rifle. See *Rose Decl.* ¶ 19. Plaintiff's bare aluminum receiver has a mirror-like finish he does not want, and no one to his knowledge has ever left a firearm in bare aluminum. *Miller Decl.* ¶ 21; *SAC Appx.*, ECF 10-2, Figure 4.

7

To summarize, Plaintiff suffers actual harm from the Rule by defeating his lawful purpose and liberty to make firearms without serial numbers and without recording in government systems. He suffers imminent injury because the Rule will force him have his PMFs engraved when he takes them in for gunsmith repairs, machining, or cerakoting. Engraving will cause him economic harm of $65—$85 per firearm, directly attributed to the Rule. Plaintiff's stated intentions to have Sterling Arsenal repair and cerakote his receivers constitute a "substantial probability" of injury that is not conjectural. *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010). These pleadings are sufficient because the Court need not guess how decisionmakers will exercise judgment. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).

      b.  <u>Injury from Solvent Trap and Other Silencer Regulations in the Rule.</u>

Plaintiff suffers a military service-connected disability of tinnitus, commonly known as ringing in the ears. *SAC* ¶ 34—39. Even without an existing hearing loss, Plaintiff would suffer hearing damage from an unsuppressed firearm. *Id.* ¶¶ 167—184. Silencers mitigate the damage caused to Plaintiff's ears from firearm report and infrasonic compression waves. *Id.* ¶¶ 169—173, 180. Being able to make silencers from solvent traps and other incomplete components, as Plaintiff expressly intended and intends to do, reduces the exorbitant cost of modern silencers ranging up to $2,000, enabling Plaintiff to protect his hearing. *SAC* ¶¶ 97—98; *Miller Decl.* ¶ 37—42. Plaintiff also started building a custom silencer for a specific gun that remains unfinished because Defendants have cracked down on all of the suppliers for his parts. *Miller Decl.* ¶ 38. Defendants' arguments that Plaintiff already owns silencers, or that he could purchase complete silencers, are irrelevant. *MTD* at 10. No case involving gun rights has ever held a person's rights to keep and bear arms can be limited because he already possesses some. Second Amendment rights are not restricted to needs. *Bruen* at 6.

For the first time in notice-and-comment rulemaking, the Agency states that solvent traps or other incomplete silencer parts are regulated by the GCA as silencer parts. Rule at 24700. Long before finalizing the Rule, Agency made this determination to isolated companies and persons purportedly violating the GCA, including bringing felony criminal charges for possession of solvent traps.[2] *Miller Decl*. ¶¶ 37—42.

Because the Rule made it unlawful for Plaintiff to possess a solvent trap, he destroyed it to be in compliance with law. *SAC* at 200; *Miller Decl.* ¶ 42. Plaintiff alleges that isolated enforcement of the GCA going back to June 2017, a preliminary draft rule on May 5, 2021, the proposed rule issued on May 21, 2021, and the final rule issued on April 26, 2022, was sufficient to cause him to destroy his solvent trap out of fear of prosecution. *SAC* ¶¶ 199; *Miller Decl.* ¶¶ 39—42. These are all agency *actions* covered by 5 U.S.C. §702, and are final actions for purposes of that statute even pre-dating the final rule.

Thus, even while Plaintiff is not entitled to monetary damages under the APA for the destruction of his solvent trap, his property loss is injury in fact caused by Agency actions, giving him standing. The Rule and Agency's interpretation of the GCA prevents Plaintiff from making silencers from solvent traps, and absent the Rule and interpretation, Plaintiff would do so. *Miller Decl*. ¶ 42.

Agency argues these incomplete silencer parts have *always* been regulated by the GCA. "Nor does the Rule change the legal status of solvent traps under the other primary federal firearms

---

[2] This Court may take judicial notice of enforcement regarding solvent traps dating to as early as June 2017: *Fosnight v. Jones*, 41 F.4th 916 (7th Cir. July 27, 2022); *United States v. Sherwood*, No. CR20-0155-JCC (W.D. Wash. Oct. 20, 2021); *United States v. Ridenour*, No. 22-20031 (E.D. Mich. May 9, 2022). Mr. Ridenour committed suicide on the eve of his sentencing.

statute, the GCA. Both before and after the Rule was promulgated, the GCA considers a solvent trap to be both a "firearm silencer" and a "firearm." *MTD* at  8. This is not true. On some particular date, the Agency simply adopted this belief and started enforcing it with no formal rulemaking until now. Contrary to Defendants' claims solvent trap parts are "*any part intended only for use in such assembly or fabrication,*" *MTD* at 9, solvent traps are useful as…solvent traps – a device useful in collecting cleaning agents coming from the end of a rifle barrel. The Agency also contradicts itself saying possessing solvent traps with intent to make a silencer is illegal, but it is still permissible under the Rule to make a silencer from a solvent trap. *MTD* at 8. As Plaintiff propounded by interrogatory in his motion for expedited discovery, ECF 12, Exh. 1, INT 6, the Agency did not explain how one could make a lawful silencer from an unlawful solvent trap under the Rule.

Agency employs a legal sleight of hand trying to use the term "readily" from different paragraphs of 18 U.S.C. §921 to apply to the specific coverage of silencer parts in §921(a)(25), which does not contain that word. Agency begs the question that solvent traps are silencer parts, relying on the irrelevant fact manufacturers "index" these parts for drilling. *MTD* at 9. As alleged, the term "readily" is vague and ambiguous. *SAC* at 264. Agency did not and cannot explain at which point in a finishing process of a solid block of aluminum, steel, or titanium it becomes "readily" converted to a silencer or silencer part. This suit directly challenges Agency's determination, and Plaintiff has standing not merely because he destroyed a solvent trap, but because he faces continuing injury in not being able to make his own silencer from these parts, which he began when commissioning a mount for a reflex silencer. *Miller Decl*. ¶¶ 38. Defendants might even consider that mount to be a regulated silencer part, but the Rule and determination is so arbitrary, capricious, vague, and ambiguous, who knows?

Agency argues Plaintiff lacks standing because he "voluntarily" destroyed his solvent trap. *MTD* at 8, citing *Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 336 (D.D.C. 2014). That case held that a plaintiff must show, "a substantial probability that the substantive agency action" plaintiff challenges "created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff." *Ellis* at 336, citing *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 669 (D.C.Cir.1996). This case is substantially distinguished from *Ellis* in that the plaintiff in *Ellis* could have filed a tax return but chose not to do so. *Id*. Plaintiff satisfied the criteria in *Ellis* because he faced a coerced choice of either retaining his solvent trap to maintain standing or face substantial risk of felony violation of the GCA – a *Hobson's Choice* where there is really only one choice. "To use the Supreme Court's words, we 'normally do not require plaintiffs to bet the farm' by violating the law in order to challenge the constitutionality of the regulating agency." *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 54 (D.C. Cir. 2015) (quoting *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010)); *Wellness Pharmacy, Inc. v. Becerra*, 20-cv-3082 (CRC), at *29 (D.D.C. Sep. 21, 2021).

This suit challenges the Agency determination for the first time in notice-and-comment rulemaking that solvent traps are regulated by the GCA. The GCA is not ambiguous or silent, and if it were ambiguous or silent, the Agency's interpretation is not a permissible construction of the statute. *SAC*, *Claim 1*, ¶¶ 437, 439. See also *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984). Defendants use considerable ink in their *MTD* defending their interpretation of law, which is irrelevant to standing, a question of law at issue in this case, and a matter for the merits. *MTD* at 8—9.

11

2. <u>Causal Relationship</u>

Proving causality does not require the agency's rule to be the proximate cause. Plaintiff must only show the injuries are "fairly traceable" to the Rule. *Council of Parent Attorneys & Advocates, Inc. v. Devos*, 365 F. Supp. 3d 28, 45 (D.D.C. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

That the injury will be inflicted by a third party – an FFL gunsmith – is of no moment. "[W]e held that even agency action which implicitly permits a third party to behave in an injurious manner offers enough of a causal link to support a lawsuit against the agency." *America's Community Bankers v. Federal Deposit Insurance*, 200 F.3d 822, 827 (D.C. Cir. 2000)(citing *Animal Legal Defense Fund v. Glickman*, 154 F.3d 426, 440-43 (D.C. Cir. 1998). The Rule at issue *requires* that a regulated third-party injure Plaintiff under threat of criminal charges or sanctions against the FFL licensee. *Rose Decl.* ¶¶ 14, 23—25, *Miller Decl.* ¶ 26. Agency seeks to extend the reach of its marking rule to private citizens by first requiring private citizens to use FFL's to mark their weapons, and second using its regulatory powers over FFLs under the interstate commerce clause to effect unlawful and injurious markings. As alleged in the complaint, this violates the Tenth Amendment because Agency has no authority to regulate transactions between private citizens and companies offering engraving or cerakoting within the same state.[3] Notably, the Rule considered but did not ultimately direct owners of unmarked firearms to engrave a serial number on their guns, likely because that would be outside of the Agency's authority to act. "The party

---

[3] While Plaintiff's standing relies on injuries affecting him. once he proves standing, his attack of the Rule as unlawful is not limited to those parts of the Rule directly affecting him. He can prevail under the standards in 5 U.S.C. §706 for any part of the Rule that is unlawful. Plaintiff has no standing to sue under the Tenth Amendment, but he may attack the Rule for violating it.

asserting the court's jurisdiction must 'show[ ] that third parties will likely react in predictable ways to the' challenged government action, *Dep't of Commerce v. New York*, —— U.S. ——, 139 S. Ct. 2551, 2566, 204 L.Ed.2d 978 (2019)" *Growth Energy v. Envtl. Prot. Agency*, 5 F.4th 1, 33 (D.C. Cir. 2021).

### 3. Redressability

Setting aside the Rule as unlawful is certain to provide Plaintiff all the relief he seeks. He will no longer be required to have his firearms marked if he obtains gunsmithing, machining, or cerakoting services for his PMFs, and otherwise Plaintiff will not have to pay up to $85 per engraved serial number. Setting aside the Rule's determination solvent traps and unmarked receivers are regulated by the NFA and GCA will completely redress the injury of not being able to make his own silencers and firearms from solvent traps and unfinished receivers and frames.

### 4. Prudential Standing

To prove prudential standing, Plaintiff must assert an interest that falls "arguably within the zone of interests protected or regulated by the statute." *Match-E-Be-Nash-She-Wish Band v. Patchak* ("*Patchak*"), 567 U.S. 209, 224 (2012) (quoting *Data Processing Service v. Camp*, 397 U.S. 150, 153 (1970); *Rossville Convenience & Gas, Inc. v. Garland*, Civil Action 20-2218 (JDB), at *14 (D.D.C. Dec. 10, 2021). For review under the Administrative Procedure Act, Plaintiff must show that his complaint falls within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Pai v. United States Citizenship & Immigration Servs.*, 810 F. Supp. 2d 102, 108 (D.D.C. 2011).

The zone-of-interests test "is not meant to be especially demanding." *Patchak* at 2210, (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) ).

"The test forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Patchak* at 2210 (quoting *Clarke* at 399.)

As a firearm owner possessing and intending to possess functional and nonfunctional unmarked receivers or frames, affected by the Rule's marking requirements, and affected by Agency's determinations regarding silencer parts and receivers, Plaintiff's interests are within the zone of interest intended to be protected or regulated by the NFA and GCA. See Rule at 27720.

## IV. PLAINTIFF'S NFA/GCA CLAIMS

### A. Defendants' Arguments Regarding the NFA/GCA.

Defendants claim this Court lacks jurisdiction to hear Plaintiff's claims regarding the constitutionality of the NFA's and GCA's regulation of short-barreled rifles, short-barreled shotguns, any other weapons, and silencers. *MTD* at 10.

First, Defendants claim the Court lacks subject-matter jurisdiction. They argue, "Plaintiff does not assert that he faces harm from any aspect of the NFA other than the transfer tax. As to that tax, Defendants claim the Anti-Injunction Act ("AIA"), 26 U.S.C. §7421, deprives this Court of jurisdiction over Plaintiff's claim for an injunction against future collection of taxes, and Plaintiff identifies no waiver of federal sovereign immunity applicable to Plaintiff's retrospective claim for refund of taxes paid." *MTD* at 10.

Defendants further argue Plaintiff lacks standing to challenge other aspects of the NFA, claiming Plaintiff does not specify how any regulation in the NFA other than the tax has caused or will cause any harm. *Id.*

Defendants then drag a red herring across this Court's attention claiming Plaintiff has successfully obtained NFA regulated firearms in the past, tangentially alleging Plaintiff suffers no

past, current, or ongoing harm. *Id.* Plaintiff has found no authorities, and Defendants cited none, showing that past ability to obtain regulated objects precludes an action seeking relief from future damages from the same law or regulation.

Defendants claim Plaintiff has no standing to bring a pre-enforcement challenge to a criminal statute. *MTD* at 11. Defendants cite this Circuit's precedent in *Seegars v. Gonzales*, 396 F.3d 1248, 1253 (D.C. Cir. 2005); *Ord v. Dist. of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009); *Navegar, Inc. v. United States*, 103 F.3d 994, 999 (D.C. Cir. 1997); *Parker v. Dist. of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007)). For the reasons laid out below, this case is distinguished from those cases, and, in any event, Plaintiff makes nonfrivolous allegations to extend, modify, or reverse existing law or for establishing new law. Fed.R.Civ.P. 11.

### B. Plaintiff Has Standing for NFA/GCA Claims

Defendants challenge Plaintiff's standing with respect to "aspects of the NFA other than the transfer tax." *MTD* at 10. They also argue this court lacks subject-matter jurisdiction over the tax aspect of the NFA because of the Anti-Injunction Act, 26 U.S.C. §7421(a). *MTD* at 12—15. So, it appears Defendants have not challenged Plaintiff's standing to contest the NFA tax. Nonetheless, Plaintiff argues herein he has standing to challenge the NFA tax and other aspects of the NFA producing economic and intangible harm.

#### 1. Injury in Fact

Plaintiff suffers continuing injury in fact because the NFA unlawfully imposes a $200 tax, and requires costly registration, fingerprinting, photographs, a background check, marking, and other administrative requirements to keep and bear firearms that are presumptively covered by the Second Amendment as bearable arms in common use for lawful purposes. *District of Columbia et al. v. Heller*, 554 U.S. 570, 582 (2008); *Caetano v. Massachusetts*, 577 U.S. 411 (2016), slip op.

at 1 (per curiam). The NFA tax is certainly economic harm. *Seegars* at 1253. Registration exposes Plaintiff to the risk of government confiscation of his lawful, privately-made NFA-regulated weapons. Fingerprinting, photographing, and a background check puts Plaintiff's private information into government records in violation of his right to be free from unreasonable searches and seizures he does not consent to. U.S. Const. amend. IV. Fingerprints cost from $0 to $65, and photographs cost $7, both submitted in duplicate. *Miller Decl*. ¶ 55. Engraving NFA markings costs Plaintiff between $65—$85. *Miller Decl*. ¶ 29. See also 27 C.F.R. §478.92 and 27 C.F.R. §479.102. Agency estimates filing an ATF Form 1 takes 4.0 hours, *Miller Decl*., Att., p. 3, which at Plaintiff's rate of pay is $383.[4] Postage costs from $8 to $15 to ensure timely delivery of fingerprints and photographs within ten days when completing eForm 1. Thus, each NFA application causes Plaintiff economic harm between $650 to $750, inclusive of NFA tax. *Miller Decl*. ¶ 55.

Plaintiff has demonstrated he owns a large collection of NFA-regulated firearms and seeks to expand that collection, and he will bear additional unlawful costs in the near future. *Miller Decl*. ¶¶ 5—10, 30, 37—38, 45—52.

Plaintiff is further injured by the NFA because of Defendants' erroneous interpretation that adding a vertical forward grip ("VFG") to a pistol or handgun converts that weapon into an AOW. *Miller Decl*. ¶¶ 46—50. Plaintiff would add VFGs to pistols and handguns but for Defendants' impermissible construction of the statute. *Id.* Plaintiff also bought a Stoeger shotgun with the intention to make an AOW from it, but he has not done so because of the NFA tax and regulation. *Id.* ¶¶ 51—52.

---

[4] Plaintiff's annual salary as of year-end 2022 was $199,465 with 2,084 hours per work year.

Plaintiff would face an imminent threat of felony prosecution up to ten years in federal prison, up to a $250,000 fine, forfeiture of weapons violative of the NFA/GCA, and permanent loss of his right to keep and bear arms if he were to make regulated firearms without paying the tax or filing other required documents. *Miller Decl*. 31—35; 18 U.S.C. §924(d), 18 U.S.C. §922(g); 18 U.S.C. §3571; 26 U.S.C. §5871; 26 U.S.C. §5872. Plaintiff will likely be fired from his federal employment for any arrest or conviction for violating the NFA, and he would become unemployable in his profession as an Economist. *Miller Decl*. 33—35. As a disabled veteran over age 56, Plaintiff would be hard-pressed to find meaningful employment for the rest of his life to support himself in his non-earning years.

Defendants rely on *Seegars*, *Ord, Navegar,* and *Parker, supra*. This case is distinguishable because Plaintiff is not solely relying on a theory of injury from imminent threat of prosecution as those cases did. Plaintiff suffers concrete, certain, particularized, and continuous injury from being denied bearable arms presumptively protected by the Second Amendment without acceding to taxes and regulations violating the United States Constitution.

To the extent this Court relies on those authorities, Plaintiff herein argues to reverse, modify, or distinguish this case because the consequences of NFA violations are so catastrophic to Plaintiff, even a small probability of arrest is sufficient to suppress Plaintiff's lawful activity violating the statute. *Miller Decl.* ¶ 35. This common economic concept of "minimizing maximum regret" means that a person is so risk-averse for a particular decision, he evaluates the worst-case consequences of each potential action, and then selects the action that minimizes the worst consequences. This is distinguished from a person maximizing expected utility, in which case a person would easily accept very small chances of catastrophic consequences (e.g., a fatal car crash) to obtain trivial benefits (e.g., getting an ice cream cone). The choice of objective functions is

intimately personal and case-specific. Plaintiff has pleaded facts demonstrating NFA penalties are too much to bear to risk violating the law.

2. Causal Relationship

The NFA and the GCA acting in concert are the direct cause of Plaintiff's injuries. Absent the NFA and GCA, Plaintiff could make, purchase, or otherwise acquire short-barreled rifles, short-barreled shotguns, AOWs, and firearms silencers without any payment of tax or burden of other NFA requirements. NFA causes Plaintiff's firearms to be maintained on an unlawful registry. Absent the NFA and GCA, Plaintiff would face no criminal liability for possessing these bearable arms in common use before, during, and long after the ratification of the Second Amendment. *SAC* ¶¶ 139—166; 186—189.

3. Redressability

If this Court sets aside as unconstitutional the NFA and GCA provisions regarding short-barreled rifles, short-barreled shotguns, any other weapons, and firearms silencers, it is obvious Plaintiff will no longer suffer the continuing injuries of having his right to bear arms infringed and conditioned upon payment of a tax, payment of engraving fees, and other requirements such as making his fingerprints, photograph, and background available to be searched by the government. Plaintiff would no longer have his presumptively lawful firearms on a government registry. Plaintiff would be fully relieved of the economic costs of filing applications to make NFA firearms.

If this Court, as requested in the *SAC*, determines Defendants' interpretations of the GCA and NFA concerning silencer parts and AOWs are impermissible constructions of the statutes, this would completely redress Plaintiff's injuries, allowing him to make his own silencers, silencer parts, and currently-classified AOWs without tax payment, registration, and other requirements and costs under the NFA.

4. <u>Prudential Standing</u>

As an owner and prospective owner of a large collection of firearms regulated by the NFA and GCA, Plaintiff's interest in this case is within the zone of interests Congress intended to be protected or regulated by the NFA and GCA.

## V.   **PLAINTIFF'S NFA TAX REFUND CLAIM**

### A.   **Plaintiff Invoked this Court's Jurisdiction for a Tax Refund.**

Defendants are correct Plaintiff made no explicit claim for an NFA tax refund under 26 U.S.C. §7421(a). However, Plaintiff clearly made such a claim in his pleadings without citing the specific statute. *SAC* Claim 2, Counts 2—4, ¶¶ 518.[5]

Pro se complaints are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520—521 (1972); *Halcomb v. Office of Senate Sergeant-At-Arms*, 563 F. Supp. 2d 228, 235 (D.D.C. 2008); *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 78 (D.D.C. 2006) ("Courts have not construed the pleading requirements of Federal Rule of Civil Procedure 8 to require a plaintiff to recite specific source(s) of law in a complaint."). "Pleadings shall be construed so as to do substantial justice." *Id.* Plaintiff need not cite the specific statute authorizing relief. *Macintosh v. Building Owners Managers Ass'n*, 355 F. Supp. 2d 223, 229 (D.D.C. 2005). "[So] long as the basis for a claim is clear, a complaint need not 'plead law' in specific detail. *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000); *November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 18 n.5 (D.C. Cir. 2008).

---

[5] Plaintiff claimed a tax refund for $9,800, which after further review of his records should be $9,400. Plaintiff received refunds totaling $400 for two NFA items he never made.

Defendants argue Plaintiff is a "highly prolific *pro se* litigant, and thus the Court need not and should not accord Plaintiff the deference to which unsophisticated, inexperienced *pro se* litigants are entitled." *MTD* at 14, n. 5, citing *Mann v. Castiel*, 681 F.3d 368, 377 (D.C. Cir. 2012). For this proposition, Defendants cite numerous discrimination and retaliation complaints Plaintiff filed, and mandamus actions in federal courts, none of which he ever prevailed in. Defendants cite *Mann,* which involved failure to perfect service of process. At best, *Mann* represents a rare exception to the general rule for that Plaintiff's repeated failures to abide by court rules.

Defendants' protest, if considered, would be for failure to state a claim for relief under Rule 12(b)(6), not for lack of jurisdiction under Rule 12(b)(1). But Defendants explicitly stated in their opposition to expedited discovery that, "Defendants have not moved for failure to state a claim; instead, they have moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Def. Opp. Exp. Disc.*, ECF 16 at 6.

If this Court were to dismiss this implicit claim, the proper remedy would be to dismiss it without prejudice.

**B.  Exhaustion of Administrative Remedies**

In a footnote, Defendants argue that even if Plaintiff established subject matter jurisdiction for a tax refund, Plaintiff has not pleaded he exhausted administrative remedies. *MTD* at 15. "The exhaustion requirement in 26 U.S.C. §7422 is jurisdictional, based on the plain language of the statute." *Martens v. U.S.*, Civil Action No. 05-1805 (RMC), at *8 (D.D.C. July 6, 2007).

Plaintiff concedes that he has not exhausted administrative remedies, but he initiated this process after Defendants' *MTD*, which cannot rescue him from dismissal. Therefore, if this Court does not grant Plaintiff's *Motion for Expedited Discovery*, ECF 12, propounding discovery requests regarding the futility of administrative exhaustion, this Court may dismiss any claims for

a tax refund for Plaintiff's NFA firearms but should do so without prejudice. "A dismissal of a complaint for failure to exhaust administrative remedies does not preclude a plaintiff from bringing another suit after he has exhausted his administrative remedies. *Roberson v. Fed. Bureau of Investigation*, Civil Action 1:20-cv-02431 (CJN), at *5 (D.D.C. Oct. 10, 2022), citing *Murthy v. Vilsack*, 609 F.3d 460, 466 (D.C. Cir. 2010).

Assuming this Court does allow Plaintiff to explore the issue of futility of exhaustion in discovery, Plaintiff argues as follows.

**C.  Plaintiff's Claim Satisfies an Exception to the Anti-Injunction Act**

The U.S. Supreme Court found two narrow exceptions to the AIA's bar against claims challenging a revenue source. The latter of these is when the taxpayer has no means of challenging the tax statute other than through an injunctive action. *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984); *Spencer v. Brady*, 700 F. Supp. 601, 604 (D.D.C. 1988).

Such is the instant case. It is simply impossible for Plaintiff to lawfully obtain, make, or keep NFA regulated firearms without payment of the tax. No licensed NFA dealer[6] could process a paper or electronic NFA Form 4 – Application for Tax Paid Transfer and Registration of Firearm – without payment of the tax. See *Rose Decl*. ¶ 31—33. It is impossible for Plaintiff to apply to make an NFA regulated firearm through ATF's eForm 1 without paying the tax, because the system will not process the application without payment. *Miller Decl*. ¶ 53. NFA Division will not process any paper Form 1 without payment of the tax. *Miller Decl.* ¶ 54. If Plaintiff made his own short-barreled rifle, shotgun, or any other weapon without paying the NFA tax, he would be subject to felony arrest with a penalty up to ten years in federal prison, up to $250,000 in fines,

---

[6] An FFL also paying a Special Occupational Tax ("SOT") to deal in NFA regulated items.

loss of his firearm, and permanent forfeiture of his firearm rights. 18 U.S.C. §924(d), 18 U.S.C. §922(g); 18 U.S.C. §3571; 26 U.S.C. §5871; 26 U.S.C. §5872.

### D. Sovereign Immunity

Defendants argue Plaintiff may not seek damages for past payment of NFA taxes, because of the jurisdictional bar of sovereign immunity. *MTD* at 15. Defendants are correct that the APA does not authorize an award of monetary damages. *Id.* Plaintiff concedes that argument without waiving any claim that the AIA and the NFA taxes are unconstitutional and that he is entitled to damages for taxes unlawfully collected.

Sovereign immunity is a court-created, common law holdover from British rule over the colonies where "the King can do no wrong." Chemerinsky, Edwin, *Against Sovereign Immunity,* Vol 53, No. 5, Symposium: Shifting the Balance of Power? The Supreme Court, Federalism, and State Sovereign Immunity (May 2001), pp. 1201—1224. Plaintiff is well-aware of longstanding precedent of sovereign immunity in the United States, but it must be struck down as antithetical to the Founding principles and nowhere to be found in the U.S. Constitution. Plaintiff is not oblivious to the monument and ambition of this task.

The Constitution of the United States was a *limited* grant of power by the *States* to the federal government they created. Every paragraph of the U.S. Constitution defined and constrained the power of the federal government based on recently-lived oppression by the Crown of Great Britain. Congress was given limited, specified powers in Article I. The powers of Congress and the Executive were restrained by the Bill of Rights. U.S. Const. amend I—X.

Nothing in the U.S. Constitution provides that the federal government is unaccountable for its crimes, torts, abuses, and violations of rights. The doctrine is derived from the law and practices of our English ancestors. *United States v. Lee*, 106 U.S. 196, 205-7 (1882). Yet this Nation

indisputably divested itself of a sovereign on July 4, 1776, and did not create a new one on September 17, 1787, when the Constitution was finalized, or on January 10, 1791, when a sufficient number of states ratified the Constitution. The Constitution explicitly bars any title of nobility. U.S. Const. Art. I, § 9.

No foundation for sovereign immunity can be discerned from the framers' intent because nothing in the minutes of the Constitutional Convention of 1787 mentioned sovereign immunity. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 104 (1996) (Souter, J., dissenting). Ratifying conventions discussed *state* sovereign immunity with alacrity. *Chemerinsky* at 1207. Federal sovereign immunity violates three fundamental constitutional principles: (1) supremacy of the Constitution; (2) accountability of government; (3) due process of law. *Id.* at 1210.

First, the Constitution is the supreme law of the land. U.S. Const. Art. VI. Sovereign immunity is a common law doctrine that cannot take precedence over the written word of the Constitution.

Second, sovereign immunity fails to maintain Congressional accountability to the Constitution, which is inherent in its structure. Article III of the U.S. Constitution established courts as a check and balance against the other two branches of government. The U.S. Supreme Court established its authority to judicially review statutes and actions in *Marbury v. Madison*, 5 U.S. 137 (1803) ("[T]he constitution is superior to any ordinary act of the legislature"). "It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress. 3 Bl. Com. 109." *Marbury* at 147. "Every act of the legislature, repugnant to the constitution, is void." *Marbury* at 177. This must, of course, apply equally to the AIA and the NFA, the former in which Congress deprives courts of jurisdiction to hear cases of Congress'

unconstitutional taxes, and the latter which was an obvious end-run around the Second Amendment by using the taxation powers of the federal government, as alleged in this complaint.

Article III, Section 2 clearly gives courts judicial power over "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States…to Controversies to which the United States shall be a Party…" If it could be construed that Congress may make "such Exceptions, and under such Regulations as the Congress shall make" to the Supreme Court's appellate jurisdiction, no Act of Congress has ever established sovereign immunity nor deprived the Supreme Court of jurisdiction over claims against the United States such as this. Embodied in the U.S. Supreme Court's exceptions to the AIA is the inherent authority to judicially review tax cases under certain circumstances, one of which is present here – the inability of Plaintiff to avoid the tax or obtain a refund of the tax through any other means. That is, Congress cannot divest Courts of jurisdiction to judicially review acts of Congress. If that were possible, Congress could completely deprive courts of all jurisdiction vis à vis Congressional and Executive actions, eliminating the check and balance of Article III courts altogether. This has profound separation of powers concerns. Ever since *Marbury*, Courts have universally fulfilled their role to overwatch Congressional and Executive overreach.

Finally, sovereign immunity violates the Fifth and Fourteenth Amendment's assurances no one will be deprived of life, liberty, or property without due process of law. Plaintiff's *SAC* directly alleges Congress sought to impose gun control laws, despite its lack of police powers and in violation of the Second Amendment, by using its tax powers. Yet, as pleaded in the case, the NFA provides no net revenue to the government; it cannot even cover its own cost of collection. That is, the NFA tax is disqualified from protection under the AIA because there are no revenues to protect.

Plaintiff concedes that Congress can impose some "sin taxes" with the intent and effect of reducing consumption of certain demerit goods. Yet the distinction in this case is that keeping and bearing NFA firearms (as bearable arms in common use at the Founding and long thereafter), regardless of anyone's personal opinion about their demerit properties, are a fundamental protected right. It would be unthinkable for this Court or any court to permit prohibitive taxation of any other fundamental right such as speaking, worshipping, assembling, press activities, or protection from unreasonable searches and seizures. Notably, Congress did not in the NFA *ban* regulated firearms, which it arguably could not have done, but allowed the right to keep and bear these weapons for an exorbitant price. This not only violates the Second Amendment, but the Equal Protection component of the Fifth Amendment, allowing only relatively wealthy people to own them.

Importantly, everyone complying with the non-tax aspects of NFA requirements is *proven* to have committed no disqualifying crimes in their lives by virtue of the background check.[7] It is indisputable that the NFA tax deprives citizens of liberty and property whether its prohibitive nature prevents ownership of these guns or imposes an expensive tax to do so.

## VI.  <u>CONCLUSION</u>

For the reasons set forth above, this Court should deny Defendants' motion to dismiss in its entirety. If the Court dismisses certain claims for lack of exhaustion or for failure to prove jurisdiction, this Court should dismiss the claims without prejudice.

---

[7] Or else having their firearm rights restored by a court.

## VII.  <u>VERIFICATION</u>

Pursuant to 28 U.S.C. §1746, Plaintiff declares under penalty of perjury the foregoing is true and correct.

EXECUTED January 12, 2023.

-s- _____

Robert M. Miller, Ph.D.
*Pro se*