**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ROBERT M. MILLER,
　　　　　　*Plaintiff,*

　　v.

MERRICK B. GARLAND, et al.,
　　　　　　*Defendants.*

Civ. Act. No: 1:22-cv-02579-CKK

**<u>SURREPLY TO DEFENDANTS' MOTION TO DISMISS</u>**

Plaintiff herein makes a brief rebuttal to a point raised for the first time in *Reply Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint*, ECF 29.

In Plaintiff's *Opposition to MTD*, ECF 19, Plaintiff clarified his complaint includes a tax refund claim in the amount of $9,400.[1] In response to Defendants' argument Plaintiff had not exhausted administrative remedies for a tax claim, Plaintiff provided new and material evidence showing he did exhaust those remedies after filing his *Opposition*. ECF 24, 25-1.

Defendants' *Reply* argued, "Plaintiff asserts that he owns 49 NFA regulated firearms for which he paid the $200,00 NFA tax, totaling $9,400. ECF No. 25-1, at 1. But the schedule attached to his TTB Form shows taxes paid pursuant to both Form 1 and Form 4.[12] Form 4 is used to transfer a NFA firearm to an individual or other entity.[13] The NFA's transfer tax shall be paid by the transferor, not the transferee. 26 U.S.C. § 5811(b). To the extent Plaintiff currently owns the relevant firearms, ECF No. 25-1, at 1, he fails to explain why he paid the transfer tax (rather than the transferor from which he obtained the firearms) or otherwise was harmed by the tax.[14]" [internal quotes omitted] ECF 29 at 16—17.

---

[1] Amended from $9,800.

Defendants are correct that the transferor pays the NFA tax to the government for Form 4 transfers, but this tells us little about Plaintiff's costs or the economic burden.

*First* – while the FFL/SOTs[2] bore the *statutory* burden of the tax, in every instance where the FFL/SOT submitted a Form 4 on Plaintiff's behalf when he bought a silencer, short-barreled rifle, or short-barreled shotgun, the FFL/SOT charged Plaintiff $200.00 for reimbursement of the FFL/SOT's tax expense.

*Second* – even if Plaintiff did not reimburse the seller, he would have born at least *some* of the economic burden of the tax. It is well-known in Public Economics that the economic incidence (burden) of a tax is independent of the statutory incidence. In other words, it does not matter which party actually pays the tax to the government. The seller will, in almost all cases, be able to pass on at least some of the tax burden they bear to the buyer in the form of higher prices.

Figure 1 depicts the supply and demand curves for hotel rooms. In the left-hand chart, the market equilibrium (point E) where the demand curve (D) and the supply curve ($S_1$) meet has a market price of $80 and quantity demanded of 10,000 rooms. If the government were to impose a $40 tax to be paid completely by the hotels, the supply curve shifts up from $S_1$ to $S_2$. The price of hotel rooms rises to $100 (point A), hotels pay the $40 tax and receive only $60 in net revenue, and the quantity demanded falls to 5,000 rooms. The right-hand chart shows that if, instead, government were to impose the $40 tax on hotel guests, the demand curve would shift downward from $D_1$ to $D_2$. Guests would then be willing to pay only $60 (point B) to the hotels, they would pay $40 to the government for a total of $100 (point A), and quantity demanded would drop to 5,000 hotel rooms. Thus, the economic results are identical regardless of who must administratively pay the tax.

---

[2] Federal Firearms License holder paying a special occupational tax to deal in or manufacture NFA regulated firearms.

**Figure 1**



Both graphs show the same price effect
Consumers pay an effective price of $100, producers receive an effective price of $60, and 5,000 hotel rooms are bought and sold
**It doesn't matter who officially pays the tax – the equilibrium outcome is the same

*Third* – which party bears the majority of the tax burden depends crucially on the *elasticities* of supply and demand. Elasticity is a measure of how much the quantity demanded/supplied changes in response to a price change. Elasticity is a function of how flexible a buyer/seller can be. The less flexible you are, the more a tax will affect you.

For example, the demand for insulin is very inelastic because diabetics who need it cannot live without it. Even if the price goes up, diabetics will not reduce their consumption very much. Thus, a tax on insulin would be born almost entirely on the consumers regardless of whether the suppliers actually pay the tax to the government.

The chart on the left of Figure 2 shows taxes imposed on a good with very inelastic supply.[3] Because the supplier can not reduce supply very much given a cost increase, the supplier bears most of the burden of the tax. The chart on the right shows a market with a more elastic supply curve. Because suppliers are more flexible and can reduce output more in response to cost increases, suppliers will bear very little of the tax and consumers will bear most of it.

---

[3] Depicted here as a very steeply sloped supply curve relative to the demand curve.

3

**Figure 2**



In conclusion, Plaintiff paid $200 dollars for NFA taxes for every firearm on the schedule in ECF 25-1, including those transferred by Form 4. He would also have been economically harmed by the NFA taxes regardless of whether he or the firearm dealer physically paid the tax to the government.

Pursuant to 28 U.S.C. §1746, Plaintiff declares under penalty of perjury the foregoing is true and correct.

EXECUTED February 23, 2023.

-s- _(signature)_

Robert M. Miller, Ph.D.
*Pro se*