**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT M. MILLER,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE, *in his official capacity as Attorney General of the United States*, *et al*.<br><br>Defendants. | Civil Action No. 22-2579 (CKK) |

**MEMORANDUM OPINION**
(November 2, 2026)

Plaintiff Robert Miller ("Plaintiff"), acting *pro se*, brings this action against the Attorney General of the United States, the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and ATF ("Defendants") challenging federal firearms regulation and legislation. Specifically, Plaintiff challenges the lawfulness of a rule promulgated by ATF that updated the definition of "firearms" subject to the Gun Control Act (GCA) (the "Rule") and the constitutionality of the National Firearms Act (NFA). Defendants have moved to dismiss Plaintiff's Second Amended Complaint for lack of jurisdiction, arguing that Plaintiff lacks standing to bring most of his claims and that review of the remaining claims is barred by the Anti-Injunction Act and sovereign immunity.

Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court finds that it lacks subject matter jurisdiction to hear Plaintiff's claims and shall therefore **GRANT** Defendants' [11] Motion to Dismiss.

[1] The Court's consideration has focused on Plaintiff's Second Amended Complaint, Dkt. No. 10 ("Am. Compl."); Defendants' Motion to Dismiss, Dkt. No. 11, ("Defs.' Mot.") and Memorandum in Support therefore, Dkt. No. 11-1 ("Defs.' Mem."); Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkt. No. 19, ("Pl.'s Opp'n") and Supplemental Opposition, Dkt. No. 28 ("Pl.'s Supp. Opp'n"); Defendants' Reply in Support of their Motion to

## I. BACKGROUND

### A. Factual Background

Plaintiff is a citizen of the United States currently residing in Virginia. Am. Compl. ¶ 2. Plaintiff's claims in this action stem from his alleged status as "an owner and prospective owner" of "firearms and firearm parts and accessories" that are regulated under the National Firearms Act of 1934 (NFA) and a rule promulgated by ATF under the Gun Control Act of 1968 (GCA) (the "Rule"). *Id.* ¶ 13. In this section, the Court shall detail the background of the NFA and the Rule.

1. <u>The National Firearms Act</u>

The National Firearms Act of 1934 (NFA) regulates the possession and transfer of statutorily-defined "firearms." 26 U.S.C. §§ 5801-5872. Under the NFA, the term "firearm" means

> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device.

26 U.S.C. § 5845(a). The term "any other weapon," in turn, means

> any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire.

*Id.* § 5845(e).

---

Dismiss, Dkt. No. 29 ("Defs.' Reply"); Plaintiff's Sur-Reply to Defendants' Motion to Dismiss, Dkt. No. 31 ("Pl.'s Sur-Reply").

Among other things, the NFA establishes a tax for the transfer of certain "firearms." 26 U.S.C. § 5811. Specifically, the NFA provides that "[t]here shall be levied, collected, and paid on firearms transferred a tax at the rate of . . . $200 for each firearm transferred in the case of a machinegun or a destructive device." *Id.* § 5811(a). This tax "shall be paid by the transferor" of the relevant firearm. *Id.* § 5811(b). The NFA prohibits the transfer of taxable "firearms" unless certain conditions are met, including that the transferor must file an application with ATF, the transferor must pay the required tax and identify the transferee and the firearm, and ATF must approve the transfer. *Id.* § 5812.

2. <u>ATF's "frame or receiver" Rule</u>

The Gun Control Act of 1968, *as amended*, 18 U.S.C. § 921 *et seq*. (GCA), includes requirements for persons engaging in the business of importing, manufacturing, or dealing in "firearms." Congress defined the term "firearms" more broadly in the GCA than it did in the NFA. Under the GCA, the term "firearm" means

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

18 U.S.C. § 921(a)(3).

The GCA does not define the terms "frame or receiver." Under its authority to promulgate rules and regulations "necessary to carry out the provisions of" the GCA, *id.* § 926(a), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) published a notice of proposed rulemaking in 2021 that proposed an update to its decades-old regulatory definition of "frame or receiver" that ATF had adopted in 1968. *See Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms*, 86 Fed. Reg. 27,720 (May 21, 2021). After considering over 290,000 public comments, ATF adopted this proposed rule in a final rule published in April 2022. *See*

*Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (the "Rule").

In its final rule, ATF explained that the Rule revises the definition of "frame or receiver . . . so that a 'frame' is applicable to a handgun, and variants thereof, and a 'receiver' is applicable to a rifle, shotgun, or projectile weapon other than a handgun, and variants thereof." *Id.* at 24,652. In addition, the Rule amends the terms "to describe only a single part that provides housing or a structure for one specific, primary fire control component of weapons that expel a projectile, or one specific, primary internal sound reduction component of firearm mufflers or silencers." *Id.* at 24,652–53. And it specifies "how these terms apply to multi-piece frames or receivers (*i.e.*, those that may be disassembled into multiple modular subparts), to firearm mufflers and silencers, to partially complete, disassembled, or nonfunctional frames or receivers, including frame or receiver parts kits, and to frames or receivers that are destroyed." *Id.* at 24,653.

**B. Procedural Background**

Plaintiff has amended his complaint twice since filing this action in August 2022. *See* Dkt. Nos. 1 (First Complaint), 7 (First Amended Complaint), 10 (Second Amended Complaint). Plaintiff's Second Amended Complaint is the operative complaint in this action. *See* Dkt. No. 10 (cited to herein as, "Am. Compl."). In more than 500 paragraphs, Plaintiff challenges the NFA and the Rule under the APA, the Second and Ninth Amendments to the U.S. Constitution, and "common law rights." *Id.* ¶¶ 413–506. The Government has moved to dismiss Plaintiff's Second Amended Complaint for lack of jurisdiction. *See* Gov't's Mot., Dkt. No. 11; Gov't's Mem., Dkt. No. 11-1. Specifically, the Government argues that Plaintiff lacks standing to challenge the Rule and the Court lacks subject matter jurisdiction over Plaintiff's claims regarding the NFA. *Id.*

## II. LEGAL STANDARD

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) requires the Court to assess whether it has subject-matter jurisdiction over the claims asserted. Fed. R. Civ. P. 12(b)(1). In response to such a motion, the party invoking the Court's jurisdiction "has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). In assessing its own jurisdiction in this posture, a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To have Article III standing—that is, the requisite "personal stake" in the outcome of a case—a party must show an "injury in fact that is concrete, particularized, and actual or imminent," that this injury "was likely caused by the defendant," and that it "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The party asserting standing must show it "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## III. ANALYSIS

Plaintiff's Second Amended Complaint is divided into three claims. First, Plaintiff claims that ATF's "frame or receiver" rule (the "Rule") violates the Administrative Procedure Act (APA). *See* Am. Compl. ¶¶ 413–43. Second, Plaintiff claims that the Rule and the National Firearms Act (NFA) violate the Second Amendment. *Id.* ¶¶ 444–97. And third, Plaintiff claims that the NFA's regulation of firearm silencers violates the Ninth Amendment and the common law "right to protect one's hearing." *Id.* ¶¶ 498–506.

Defendants argue that the Court lacks subject matter jurisdiction over all of Plaintiff's claims. The Court shall address Defendants' argument in two parts. First, the Court shall consider

whether it has subject matter jurisdiction over Plaintiff's challenges to the Rule. Upon doing so, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's challenges to the Rule because Plaintiff has not shown that the Rule causes him an injury sufficient for Article III standing. Second, the Court shall consider whether it has subject matter jurisdiction over Plaintiff's challenges to the NFA. Upon doing so, the Court concludes that it lacks subject matter jurisdiction over these claims—Plaintiff has not alleged an Article III injury outside of the NFA's transfer tax scheme, and the Court lacks subject matter jurisdiction over Plaintiff's challenges to the NFA's transfer tax scheme because Plaintiff's claims for prospective relief (i.e., the Court's enjoining of the tax) are barred by the Anti-Injunction Act and Plaintiff's claims for retrospective relief (i.e., the refund of taxes already paid) are barred by the United States' sovereign immunity.

The Court therefore concludes that it lacks subject matter jurisdiction over the three claims in Plaintiff's Second Amended Complaint. Accordingly, the Court shall **GRANT** Defendants' [11] Motion to Dismiss in full.

### A. The Court lacks subject matter jurisdiction over Plaintiff's challenges to ATF's "frame or receiver" rule.

Plaintiff argues that ATF's "frame or receiver" rule (the "Rule") has unlawfully "caus[ed] loss of his private property, unwarranted regulation of his actions and private property, exposure to potential felony criminal prosecution for non-harmful actions, and restricting his liberties, especially those protected by the United States Constitution, Articles of Amendment II, IV, V, IX and the Common Law." Am. Compl. ¶ 11. Upon review of the record,[2] however, the Court concludes that Plaintiff has failed to allege that the Rule has caused him, or imminently will cause him, any concrete injury.

[2] Because Plaintiff is a *pro se* litigant, the Court may consider supplemental materials filed by Plaintiff to clarify his claims without converting the Government's motion to dismiss into a motion for summary judgment. *See Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007).

Plaintiff does not allege that he is currently engaged in conduct that is proscribed by the Rule, nor does he allege that he imminently plans to engage in any such conduct. For instance, Plaintiff does not allege that he is legally barred from purchasing any of the products that were affected by the amendments in the Rule. Nor does he allege that he is engaged in the making and selling of any such product without a federal firearms license. Instead, Plaintiff alleges that he owns many firearms that are not covered by the Rule, Am. Compl. ¶ 13, 30-31, 40–46, and that he owns two unfinished receivers that he intends to convert into functional receivers that he intends to have "cerakoted"[3] by a federal firearms licensed dealer, *id.* ¶¶ 50–52, 60. Plaintiff also alleges that he is the "prospective owner of regulated firearms and firearm parts and accessories under the rule." *Id.* ¶ 13.

Plaintiff's professed "intent" to engage in potentially regulated conduct "is simply not enough" to establish Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). "When a plaintiff relies on imminent (i.e., prospective) injury, it is not enough to allege that an injury is merely possible; rather, the plaintiff must establish that the injury is certainly impending, or, at the very least, that there is both a substantial probability and substantially increased risk of harm." *Indigenous People of Biafra v. Blinken*, 639 F. Supp. 3d 79, 83–84 (D.D.C. 2022) (JMC) (citations and quotations omitted). Plaintiff does not allege with any specificity how he intends to convert the two unfinished receivers that he owns into fully functional receivers or when that might happen. Nor does he allege with any detail what "regulated firearms and firearm parts and accessories" he is the "prospective owner" of. Am. Compl. ¶ 13. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day

[3] Plaintiff's Second Amended Complaint asserts that "Cerakote is a ceramic-based thermoset composite coating that is applied to the surface of firearms as a protective and colored finish." Am. Compl. ¶ 53.

will be—do not support a finding of the 'actual or imminent' injury that [standing] require[s]." *Lujan*, 504 U.S. at 564 (emphasis in original).

Plaintiff also alleges that he *intends* to construct privately made firearms ("PMFs") that, once constructed, he *intends* to bring to a federal firearms licensee ("FFL") to be serviced or repaired, and that *if* this FFL holds his firearms for more than one day, the Rule will require the FFL to mark his PMFs with a serial number. *Id.* ¶¶ 54–58. Again, Plaintiff "stacks speculation upon hypothetical upon speculation, which does not establish an 'actual or imminent' injury." *New York Reg'l Interconnect, Inc. v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011) (citing *Lujan*, 504 U.S. at 560). Plaintiff does not indicate when or how he intends to construct these PMFs. Nor does he provide any information about which FFL he intends to have service these hypothetical PMFs, when that would take place, or why it would take more than one day. Moreover, the only injury Plaintiff alleges from this hypothetical chain of events is that he "does not *wish* to have his PMFs marked with a serial number." Am. Compl. ¶ 56 (emphasis added). But this is not a concrete injury, as "the presence of a serial number does not impair the use or functioning of a weapon in any way," *United States v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010), and weapons without serial numbers "would be preferable only to those seeking to use them for illicit activities," *United States v. Price*, 111 F.4th 392, 406 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1891 (2025). Accordingly, these allegations do not establish an actual or imminent injury to Plaintiff.

Finally, Plaintiff cannot establish standing through his allegations regarding his alleged destruction of a "solvent trap" that he owned. *See* Am. Compl. ¶¶ 197–201. Plaintiff alleges that he owned a solvent trap—a device that can be attached to a firearm to fabricate a silencer—with the intention of converting it into a firearm silencer, but that he "destroyed and discarded his solvent trap because of the proposed Rule." *Id.* ¶¶ 197, 200. This allegation does not establish

standing for several reasons. First, Plaintiff's alleged injury is entirely self-inflicted, and "it is well-settled in this jurisdiction that self-inflicted injuries—injuries that are substantially caused by the plaintiff's own conduct—sever the causal nexus needed to establish standing." *Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 336 (D.D.C. 2014) (ABJ), *aff'd sub nom. Ellis v. Comm'r*, 622 F. App'x 2 (D.C. Cir. 2015). In addition, Plaintiff cannot contend that his decision to destroy his solvent trap was due to fear of imminent harm because "the Rule did not affect the preexisting legal status of such devices under federal law." Defs.' Mot. at 9. And finally, even assuming for the sake of argument that Plaintiff's destruction of his solvent trap constituted an adequate injury for standing, it would not justify his claims for prospective declaratory and injunctive relief because it would be a past injury. *See Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 689 (D.C. Cir. 2015) (a plaintiff seeking forward-looking relief must show that they are "suffering an ongoing injury or face[] an immediate threat of injury") (citation omitted).

Accordingly, the Court concludes that Plaintiff has not established standing to bring his challenges to ATF's "frame or receiver" rule, and it shall therefore **GRANT** Defendants' [11] Motion to Dismiss with respect to those claims.

**B. The Court lacks subject matter jurisdiction over Plaintiff's challenges to the NFA.**

Plaintiff also challenges as unconstitutional the "regulation and taxation" of all weapons, including, but not limited to, short-barrel shotguns and silencers. *See* Am. Compl. ¶¶ 444–523. This amounts to a challenge to the entirety of the NFA and related gun-control statutes. For the reasons stated below, the Court finds that it lacks subject matter jurisdiction over these claims.

1. <u>Plaintiff lacks standing to challenge the NFA outside of the NFA's transfer tax scheme.</u>

At the outset, Plaintiff has not plausibly alleged that he is harmed by the NFA's regulation of weapons outside of the NFA's transfer tax. Plaintiff does not allege that ATF has ever denied him approval to acquire a firearm that is regulated under the NFA. Plaintiff has owned "more than one hundred firearms" and has successfully obtained forty-nine firearms that are subject to regulation under the NFA, including twenty-four short-barreled rifles, two short-barreled shotguns, and twenty-three silencers. Am. Compl. ¶¶ 40–47. Nor does Plaintiff allege that the NFA will prevent him from acquiring any firearm he wants to acquire in the future. While Plaintiff claims that he "would own more [regulated firearms] or better ones" but for the NFA's regulation, *id.* ¶ 48, he does not indicate what additional firearms he would acquire nor does he allege how the NFA would prevent him from acquiring those firearms. "Such conclusory allegations unmoored from specific, concrete facts are insufficient to establish an injury for standing purposes." *Double R Ranch Tr. v. Nedd*, 284 F. Supp. 3d 21, 30 (D.D.C. 2018) (CRC).

In addition, to the extent Plaintiff's allegations can be construed to raise the fear of future criminal prosecution as a basis for standing, Plaintiff fails to meet the requirements for such a challenge. Where a plaintiff has yet to face prosecution under a statute they seek to challenge, they must show that the threat of prosecution is "both credible and imminent" by "demonstrat[ing] that their prosecution results from a special law enforcement priority, namely that they have been singled out or uniquely targeted by the government for prosecution." *Ord v. D.C.*, 587 F.3d 1136, 1140–41 (D.C. Cir. 2009) (citation omitted and modified). Plaintiff has failed to allege any credible fear of future prosecution because, as explained above, he has not pled a concrete intention to engage in specific conduct that could potentially expose him to criminal prosecution under the NFA. *See Seegars v. Gonzales*, 396 F.3d 1248, 1253 (D.C. Cir. 2005). Moreover, Plaintiff has

not pled that he has been "singled out or uniquely targeted by the government for prosecution." *Ord*, 587 F.3d at 1140–41 (citation omitted and modified). Accordingly, any threat of future prosecution that could be gleaned from Plaintiff's Second Amended Complaint is "merely abstract or speculative" rather than "credible and imminent." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997).

Finally, Plaintiff's allegations regarding his suffering from tinnitus do not change the fact that he has not pled an injury outside of the NFA's transfer tax scheme. Plaintiff alleges that he suffers from tinnitus and that firearm silencers reduce harm to his hearing while he uses firearms. *See* Am. Compl. ¶¶ 34–35, 500, 502. But as the Court explained above, Plaintiff admits that he has successfully obtained twenty-three silencers. *See id.* ¶ 45. Furthermore, Plaintiff has not alleged that the NFA has caused or exacerbated his tinnitus or prevented him from using a silencer when operating firearms. And he does not allege that the NFA will prevent him from obtaining firearms in the future. Plaintiff's tinnitus therefore does not establish an injury with respect to his challenge to the NFA.

Accordingly, the Court concludes that Plaintiff has not established standing to challenge the NFA's regulation of weapons outside of the NFA's transfer tax scheme, and it shall therefore **GRANT** Defendants' [11] Motion to Dismiss with respect to those claims.

2. The Court lacks subject matter jurisdiction over Plaintiff's challenges to the NFA's transfer tax scheme due to the Anti-Injunction Act's jurisdiction stripping provision and Plaintiff's failure to establish a waiver of sovereign immunity.

Plaintiff also challenges the NFA's $200 transfer tax for specific firearms. *See* Am. Compl. ¶¶ 466, 482, 497, 506. Plaintiff seeks both prospective and retrospective relief with respect to these claims. Prospectively, Plaintiff seeks a declaratory judgment that the NFA's transfer tax violates the Second Amendment, the Ninth Amendment, and the Common Law, and an injunction

against enforcement of the challenged transfer tax. *Id.* ¶¶ 509–13. Retrospectively, Plaintiff seeks a refund of all taxes he has paid pursuant to the NFA's transfer tax. *Id.* ¶¶ 41–42, 45, 518. For the reasons stated below, the Court finds that it lacks subject matter jurisdiction to hear Plaintiff's claims for prospective and retrospective relief.

a. *The Court lacks subject matter jurisdiction over Plaintiff's claims for prospective relief because the Anti-Injunction Act strips the Court of jurisdiction to hear such claims.*

The Anti-Injunction Act ("AIA") provides that, with certain exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a); *see also Optimal Wireless LLC v. Internal Revenue Serv.*, 77 F.4th 1069, 1070–71 (D.C. Cir. 2023). The purpose of the AIA is to "protect[ ] the Government's ability to collect a consistent stream of revenue" by ensuring that "taxes can ordinarily be challenged only after they are paid, by suing for a refund." *Nat'l Fed'n of Indep. Bus. v. Sebelius ("NFIB")*, 567 U.S. 519, 543 (2012).

The Supreme Court has recognized two exceptions to the AIA's general rule against suits brought "for the purpose of restraining the assessment or collection of any tax." *See* 26 U.S.C. § 7421(a). First, under the Court's decision in *South Carolina v. Regan*, 465 U.S. 367, 372–73 (1984), the AIA does not bar an action if "Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax." Second, under the Court's decision in *Enochs v. Williams Packing & Navigation Co. ("Williams Packing")*, 370 U.S. 1, 7 (1962), a suit otherwise barred by the AIA may proceed "if it is clear that under no circumstances could the Government ultimately prevail" and the plaintiff makes the showings traditionally required for equitable relief, including demonstrating a sufficient likelihood of irreparable harm.

Plaintiff's claims regarding the validity of the NFA's transfer tax fall under the AIA's general rule against suits brought for the purpose of restraining the assessment or collection of any

tax. Plaintiff brings a direct challenge to the collection of the NFA's transfer tax, and the prospective remedy Plaintiff seeks "carries clear, direct 'implication[s]' for the 'assessment and collection' of taxes." *Oregon Env't Council v. Internal Revenue Serv.*, 836 F. Supp. 3d 1, 36 (D.D.C. 2026) (CKK) (quoting *Cohen v. United States*, 650 F.3d 717, 727 (D.C. Cir. 2011)). Therefore, if the Court is to have subject matter jurisdiction over Plaintiff's claims for prospective relief, then it must determine that one of the AIA's recognized exceptions applies.

Plaintiff's claims do not qualify for either of the two exceptions to the AIA's general prohibition. Plaintiff argues that his claims qualify for the exception articulated in *South Carolina v. Regan* because it is "impossible for [him] to lawfully obtain, make, or keep NFA regulated firearms without payment of the tax." Pl.'s Opp'n at 21. But the question under *South Carolina v. Regan* is whether Plaintiff has "an alternative avenue . . . to litigate [his] claims." *South Carolina*, 465 U.S. at 381. And here, he clearly does: Plaintiff can bring a refund suit pursuant to 28 U.S.C. § 1346(a)(1). As the D.C. Circuit has held, "a refund suit . . . *is* an 'alternative remedy'" for purposes of the *South Carolina* exception. *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 130 n. 1 (D.C. Cir. 2017). Furthermore, while Plaintiff has not argued for its applicability, the Court finds that the *Williams Packing* exception does not apply, either, because Plaintiff's "contentions are sufficiently debatable to foreclose any notion that 'under no circumstances could the Government ultimately prevail.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 749 (1974) (quoting *Williams Packing*, 370 U.S. at 7); *see also Oregon Env't Council*, 836 F. Supp. 3d at 39.

Accordingly, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims for prospective relief regarding the NFA's transfer tax because the Anti-Inunction Act strips

the Court of jurisdiction to hear such claims. The Court shall therefore **GRANT** Defendants' [11] Motion to Dismiss with respect to those claims.

b. *The Court lacks subject matter jurisdiction over Plaintiff's claims for retrospective relief because Plaintiff has not shown a waiver of sovereign immunity.*

Plaintiff also seeks retrospective relief from the NFA's transfer tax in the form of a refund for taxes that Plaintiff has paid pursuant to the transfer tax. *See* Am. Compl. ¶ 518. "The threshold issue" for Plaintiff's refund claim "is whether the funds are protected by sovereign immunity," as "[m]onetary claims against the government are barred by sovereign immunity unless the government has expressly waived its immunity." *Consol. Edison Co. of New York v. Bodman*, 445 F.3d 438, 446 (D.C. Cir. 2006). This issue "goes to the subject matter jurisdiction of the court." *Delta Foods Inc. v. Republic of Ghana*, 265 F.3d 1068, 1071 (D.C. Cir. 2001). Plaintiff bears the burden of establishing that sovereign immunity has been abrogated by identifying a statute that expressly waives the government's immunity with respect to his refund claims. *See Glogau v. United States*, No. 20-cv-2803 (CKK), 2020 WL 7122852, at *2 (D.D.C. Dec. 4, 2020).

Plaintiff has not carried his burden of establishing that sovereign immunity has been waived with respect to his refund claims. Plaintiff alleges that the Court has jurisdiction for this action under the general federal question statute, 28 U.S.C. § 1331, and the APA, 5 U.S.C. § 702. Am. Compl. ¶ 5. But the general federal question statute does not waive sovereign immunity. *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996). And the APA expressly limits its waiver of sovereign immunity to actions "seeking relief other than money damages." 5 U.S.C. § 702. "Congress has not waived the federal government's immunity from suit for claims seeking monetary damages under either the APA or the Constitution." *Fletcher v. U.S. Dep't of Just.*, 17 F. Supp. 3d 89, 93 (D.D.C. 2014) (RC). Plaintiff's allegations therefore fail to provide a statutory

basis for the Court to find that Congress has waived the government's sovereign immunity with respect to Plaintiff's refund claims.

Plaintiff concedes that the APA does not authorize an award of monetary damages and instead argues that the "longstanding precedent of sovereign immunity in the United States . . . must be struck down as antithetical to the Founding principles and nowhere to be found in the U.S. Constitution." Pl.'s Opp'n at 22 (where Plaintiff acknowledges that he "is not oblivious to the monument and ambition of this task"). "However, it is not [this Court's] role as a District Court to reconsider the clear and overwhelming precedent of this Circuit." *Daingerfield Island Protective Soc. v. Lujan*, 797 F. Supp. 25, 28 (D.D.C. 1992), *aff'd sub nom. Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442 (D.C. Cir. 1994). And while the Constitution does not explicitly mention sovereign immunity, "it is well established that '[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *DeBrew v. Atwood*, 792 F.3d 118, 124 (D.C. Cir. 2015) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)); *see also Sossamon v. Texas*, 563 U.S. 277, 283 (2011) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*.") (quoting THE FEDERALIST No. 81, p. 511 (B. Wright ed.1961) (A. Hamilton)) (emphasis in original). The Court shall therefore decline Plaintiff's invitation to reconsider the longstanding precedent of the sovereign immunity of the federal government.

Accordingly, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims for retrospective relief regarding the NFA's transfer tax because Plaintiff has not alleged a waiver of the federal government's sovereign immunity. The Court shall therefore **GRANT** Defendants' [11] Motion to Dismiss with respect to those claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction over the claims brought in Plaintiff's Second Amended Complaint. Accordingly, it is hereby **ORDERED** that Defendants' [11] Motion to Dismiss is **GRANTED.**

**SO ORDERED.**

**Dated:** November 2, 2026

Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge